## THE STATE ex rel. COMPTON v. CHARITON DRAINAGE DISTRICT et al.

### In Banc, December 22, 1905.

1. **DRAINAGE DISTRICT: Public Corporations.** A drainage district, organized under sec. 8251 et seq., R. S. 1899, is not a private but a public corporation. It is declared to be a public corporation by sec. 8253, R. S. 1899, and by sec. 8253 of the act of 1905, and is such aside from the statutory characterization.

2. ————: **Repealing Act of 1905: Effect on District Being Organized.** The drainage district act of 1905 contemplated that proceedings, in the way of organization and issuing and selling of bonds, begun under the old law but not consummated at the time the new went into effect, may be proceeded with and completed under the new law so far as the new is applicable. That act did not undo any steps taken legally and in good faith under the old law, nor require a district already organized, in order to sell its bonds, to organize and begin anew. Its manifest purpose was to provide for cases that might be initiated after it went into effect. And although the act of 1905 repealed the old law and enacted a new law in lieu thereof, yet a district which was organized, had employed surveyors to make a survey and formulate the plan and estimate the cost of doing the work, had approved the commissioners' report recommending the issuance of bonds in accordance with the estimates, and had done everything as the old law required except deliver the bonds, when the old law was repealed, had the right to proceed to the completion of the matter.

Mandamus.

PEREMPTORY WRIT AWARDED.

*H. S. Priest* for relator.

(1)   To what extent may sections 8251 et seq., be repealed as to corporations organized under them? The resolution of this question necessarily requires a consideration of the character of such corporations and the purposes for which they are authorized to be formed. Are they private or business corporations, or are they governmental or political corporations? If the former, the Legislature may not at will alter, amend or strike down rights and benefits which have been given by the previous legislation constituting their charters.  Even a municipal corporation endowed with a dual character, policical and business, is protected in its latter powers from such legislative emasculation.  Lexington v. Thompson, 57 L. R. A. 775; Brown v. Hummell, 9 Pa. St. 86; Regents v. Williams, 9 Gill & J. 365.   (2)   Section 8263 seems to be an act to preserve to existing drainage companies all of the rights which they possessed under the old law, and in recognition of the doctrine which we have heretofore been contending for, together with such additional privileges as may be conferred by the new.  This section is not happily worded, but legislation of this character must be construed with reference to the intent of the Legislature.  Some words may be rejected and others substituted by construction in order to accomplish this intent.

*R. H. Kern* for respondents.

MARSHALL, J.—This is an original proceeding by mandamus to compel the respondent district and the supervisors thereof to execute and deliver  to the relator $65,000 in bonds of the drainage district.  An al-

ternative writ of mandamus was issued. The respond-
ents entered their appearance, admitted the facts stated
in the petition for the alternative writ, and averred that
in their judgment it would be advantageous to the dis-
trict to issue and deliver the bonds to the relator if they
have a legal right so to do. The petition for the alter-
native writ alleges that the defendant district was or-
ganized, pursuant to the provisions of section
8251 et seq., Revised Statutes 1899, on the 16th of
May, 1904, for the purpose of reclaiming and protecting
from water by drainage or otherwise, a contiguous body
of swamp or overflowed land in Macon county, Mis-
souri; that the other respondents are the duly elected
and qualified supervisors of the district; that on the
9th of June, 1904, the board of supervisors, pursuant to
the provisions of section 8259 Revised Statutes 1899,
employed engineers to make a topographical survey of
said district and a full and complete plan for reclaiming
and draining the same, and also to estimate the cost of
the work necessary to be done in connection therewith;
that the engineers made a full report on the 9th of No-
vember, 1904, showing the work necessary to be done,
and estimated the cost thereof to be $65,000, which re-
port was unanimously approved and adopted by the
board; that on the 10th of April, 1905, the board as pro-
vided by section 8263, unanimously resolved to issue,
under the terms of said section, $65, 000 in bonds to pro-
cure the money necessary to do the work, and called a
meeting of the owners of the land, to be held on the 1st
of May, 1905, to consent thereto, and that such meeting
was then held and the owners of more than two-thirds
of the acres of the land in the district voted to consent
to ratify and approve the issuance of the bonds; that in
pursuance of the provisions of the statute the board of
supervisors sold said bonds to the relator at the full face
value thereof, but that the board had received legal ad-
vice that the act approved April 8, 1905 (Laws 1905,
p. 190), in reference to swamp and overflowed lands,

repealed the law under which the proceedings aforesaid had been had, and accordingly the board declined and refused to execute and deliver the bonds to the relator; that the refusal of the supervisors was no legal justification, "for that said act of the Legislature is not retroactive and did not annul the action taken by the said supervisors, and for that section 8263q of said act expressly reserves from the operation of said act all proceedings theretofore taken by any drainage district under the section which said act seeks to repeal."

I.

The first contention of the relator is that the respondent district is a private and not a public corporation, and therefore the act of 1905 could not have the effect of repealing the old law under which the respondent corporation was acting.

This contention is untenable. In Morrison v. Morey, 146 Mo. 1. c. 560, and in Land & Stock Co. v. Miller, 170 Mo. 1. c. 253 and 258, a like contention was held untenable, and drainage corporations were held to be public, governmental agencies, and in no sense private corporations. The conclusions then reached are emphasized both by section 8253, Revised Statutes 1899, and by section 8253 of the act of 1905, both of which declare that the judgment of the circuit court shall duly declare and decree said drainage district "*a public corporation of this State.*"

Thus such corporations have been declared to be public corporations, both by this court, and by the express declaration of the acts under which they are authorized to be formed and to exist.

II.

The second contention of the relator is, that by virtue of section 8263q of the act of 1905, the defendant corporation is expressly permitted to issue the bonds in question.

Section 8263q of the act of 1905 provides as follows:

"Where proceedings have been begun under the provisions of the section hereby repealed, they may be proceeded with and completed under the provisions of this act:    Provided, that all liens, remedies and processes for the collection of the taxes provided for in this act shall, so far as applicable, be available for the collection of taxes levied and bonds issued under the sections hereby repealed:    Provided, further, that in all cases where drainage districts have been incorporated under the said section repealed and the work of drainage has been commenced or completed, in whole or in part, no rights or obligations incurred by district or individuals shall be nullified, invalidated or for naught held."

For the purposes of this case it is not necessary to analyze or point out the various changes that were made by the act of 1905 in respect to corporations organized for the purpose of drainage.    The scheme of the law, as it existed prior to the act of 1905, was fully pointed out by this court in the cases cited in the first paragraph of this opinion.    The act of 1905 expressly repealed certain of the sections of the old law and enacted new sections, with similar numbers, in lieu thereof, and in addition made other minute provisions in reference to the subject.    The act of 1905 is a very elaborate, minute and detailed scheme.    The difference between the old and the new act, which presents the crucial question in this case, consists in this: under the old law the expense of the improvement was paid by an assessment of a tax not exceeding fifty cents on each acre of land, situated in the district, to be benefited, for each year (sec.8262), and to enable the supervisors to proceed with the work before the assessments were collected, it was provided by section 8263 that the supervisors, with the consent of the owners of not less than two-thirds of the whole number of acres in the district, might borrow money and issue bonds therefor upon the credit of the district,

in a sum not exceeding six dollars per acre upon all the
land in the district, such bonds to bear six per cent in-
terest, and to be sold for not less than ninety cents on
the dollar, and to be paid for out of the proceeeds of the
assessment of the tax provided for by section 8262.
Under the act of 1905 the funds necessary to pay for the
improvement are authorized to be raised by an assess-
ment upon all the land in the district in the proportion
that each tract of land is benefited by the improvement;
and such benefits are assessed by commissioners ap-
pointed by the circuit court, whose report is subject to be
confirmed by the court and the benefit assessed charged
as a lien on the land. Such benefits are payable in twenty
annual installments, and the amount of each installment
is determined by the board of supervisors each year.
But section 8263 of the act of 1905 vests power in the
supervisors to issue bonds in an amount not exceeding
the tax levy, to mature at annual intervals, commencing
after a period of five years, and payable out of the pro-
ceeds of the benefits assessed  against the land—such
bonds to be sold for not less than ninety-five cents on the
dollar with accrued interest. In other words, the dif-
ference between the old and the new law is, that the
old law assessed an arbitrary tax of fifty cents an acre
a year, while the new law assesses the tax on each tract
of land in the proportion that it is or will be benefited
by the improvement.  The old law authorized the issu-
ance of bonds in a sum sufficient to pay for the whole
improvement, but not to exceed six dollars per acre,
whereas the new law authorizes the issuance of bonds in
an amount not to exceed the amount of the tax levied
by the judgment of the circuit court.

Read in its entirety, and construed according to its
spirit, section 8263q of the act of 1905 contemplates that
when proceedings have been begun under the old law,
they may be proceeded with and completed under the
new so far as the new is applicable.  It was not the in-
tention of the framers of the law to undo any steps that

had been in good faith, and legally, taken prior to the enactment of that act, in accordance with the provisions of law theretofore in force, and to require the district to organize and begin anew. The manifest purpose of that act was to provide for cases that might be *initiated* after the act went into effect, and the intention of section 8263q was to remove any questions that might be raised in cases like the case at bar, where the proceedings had been initiated but had not ripened into fruition at the date the act of 1905 went into effect. The act of 1905 was approved on April 8, 1905. Prior to that time the defendant corporation was organized, on the 16th of May, 1904, and on the 9th of June, 1904, it employed engineers to make a topographical survey and formulate the plan and estimate the cost of doing the work, and on November 9, 1904, the commissioners made their report, which was unanimously adopted by the board. All that remained then to be done was to determine whether the work would be done in piecemeal, as rapidly as the funds could be collected out of the assessments, or to issue bonds so that the whole work might be done at once and the bondholders be paid out of the proceeds of the taxes. The board resolved to issue the bonds on the 10th of April, 1905, and a meeting of the landholders was called for May 1, 1905, to consent to or to reject the proposition to issue bonds. So that it appears that all of the statutory steps had been taken by the defendant corporation prior to the taking effect of the act of 1905, except with reference to issuing bonds in place of doing as much work each year as the assessments collected for that year enabled the board to do.

The proceedings spoken of in section 8263q had, therefore, been begun under the old law before the act of 1905 took effect, and those proceedings had ripened into a formation of the district, the survey, the formulation of the plan, the estimate of the cost, the levy of a tax of fifty cents an acre a year to pay for the work

when completed. Having reached that stage there can be no question that the defendant corporation has a right to continue its organization, proceed with its work and pay for it out of the tax levied before the act of 1905 took effect. The only matter then which had not been fully completed when the act of 1905 took effect was to provide for the issuance of bonds, payable out of the tax, so as to enable the defendant corporation to have the work done at once by applying the proceeds of the sale of the bonds thereto. Under section 8263 of the old law bonds could not have been issued without the consent of the owners of not less than two-thirds of the whole number of acres in the district, and could not exceed six dollars per acre. Under section 8263h of the act of 1905 the board of supervisors is vested with full power to issue bonds, without the consent of the owners of the property, if in their judgment it seemed best, the bonds not to exceed the benefits assessed against the land by the judgment of the court.

It thus appears that so far as the interests of the property-owners are concerned the old law gave the owners a voice in the issuance of the bonds, while the new law gives them no such voice. Both the old and the new law provide that the bonds shall be paid out of the benefits or tax collected. So far as the property-owners are concerned, therefore, there can be no possible injury accruing to them by construing section 8263q as authority for the issuance of the bonds in question. If the bonds in question were not issued, that section unquestionable would permit the board of supervisors to immediately issue bonds under section 8263h of the act of 1905, so far as that section was applicable. But in the actual performance of issuing the bonds some technical difficulties might be encountered, which might impair the negotiability of the bonds, and might make it impossible for the supervisors to obtain full face value of the bonds, as they have done in this case.

Section 8263q might have been couched in language

less susceptible of doubt and less likely to produce confusion, but construed from any point of view, the purpose, meaning and spirit of that act undoubtedly was to permit public corporations, like the defendant corporation, that had progressed to the point that this corporation had gone in the proceedings to drain the district and to provide the funds for the payment thereof, to proceed to the completion of the matter and to accomplish the end intended, as the law in force at the time such proceedings were begun contemplated should be done.

The foregoing considerations necessarily lead to the conclusion that the defendant corporation has a legal right to execute and deliver the bonds in question to the relator, and no sufficient reason for not so doing appearing, the alternative writ of mandamus heretofore issued is hereby made peremptory.

All concur.