THOMAS C. WILSON, Administrator of Estate of HENRY W. PERKINS, Appellant, v. KING'S LAKE DRAINAGE & LEVEE DISTRICT.

In Banc, July 15, 1911.

1. **APPELLATE JURISDICTION: Petition, and Demurrer Sustained: Amount in Dispute: How Determined: Interest.** Where a demurrer to the petition was sustained, and plaintiff appealed, the court, in determining its appellate jurisdiction, is not confined to the prayer of the petition in determining what is the monetary amount in dispute, but must take the whole instrument and determine what sum was involved and at issue at the date of the judgment from which the appeal is taken. And if the principal sum demanded, together with interest up to the date the judgment was rendered, amount to less than $7,500, the Supreme Court does not have jurisdiction of the appeal.

2. ———: **Drainage District: Political Subdivision of State.** A drainage district is not a political subdivision of the State in the sense of those words as used in the Constitution giving the Supreme Court appellate jurisdiction in a case in which a political subdivision of the State is a party. The words there used, "county or other political subdivision of the State," mean a county, or such political subdivision as may be created having powers similar to those of a county, and do not include townships, school districts, levee districts, drainage districts, and such like minor political subdivisions of the State.

Appeal from Lincoln Circuit Court.—Hon.————

TRANSFERRED TO ST. LOUIS COURT OF APPEALS.

*F. L. Scofield* and *E. B. Woolfolk* for appellant.

*O. H. Avery* and *Wm. A. Dudley* for respondent.

GRAVES, J.—This is an action to recover a money judgment, and a serious question is as to our jurisdiction under the Act of 1909, increasing the jurisdiction of the Courts of Appeals to $7500. This case was not submitted to this Court until long after that act took effect, and if the amount involved is less than $7500 it was our duty to certify the cause to the proper Court of Appeals. The appeal in this case was taken October 17, 1906. Plaintiff filed a petition, to which a demurrer was filed and sustained. To determine the amount we must, therefore, go to the petition itself. We are not bound by the prayer of the petition, but must take the whole instrument and determine what sum is involved and at issue at the date of the judgment from which the appeal is taken. [Wilson v. Russler, 162 Mo. 565; Wolff v. Matthews, 98 Mo. 246; Milling Co. v. Walsh, 97 Mo. 287; State ex rel. King v. Gill, 107 Mo. 44.]

The prayer of this petition reads: "Wherefore, premises considered, plaintiff prays judgment against the defendant for the said sum of $5672.56, the amount of said indebtedness so evidenced by said warrants, with six per cent interest per annum on the respective sums mentioned in said warrants, respectively, from the said dates thereof respectively. And that plaintiff have such other further and general or special relief in the premises as equity may require and as to the court shall seem meet."

But going to the petition itself, we find this state of facts. In 1894, under the Act of 1893 (Laws 1893, p. 188) a proper number of persons residing and owning swamp and overflow lands in Pike and Lincoln

counties, this State, presented their petition to the county court of Lincoln county, praying said court for the organization of the "King's Lake Drainage and Levee District." The petition was filed in Lincoln county because the greater portion of the lands to be incorporated therein was situated in that county. To this petition remonstrances were filed, and after consideration of both petition and remonstrances, the prayer of the petitioners was granted, and three commissioners were appointed to lay out and construct the work, one of whom was W. J. Seaman. These commissioners made their report as required by statute, and at the May term of the said county court in the year 1895 said drainage district was established under the name hereinabove set out, and the same was declared to be a body corporate. One Jamison, who had remonstrated, and whose lands were charged with $5,726 benefits and credited with $205.56 damages, appealed to this court. [King's Lake Drainage and Levee District v. Jamison, 176 Mo. 557.] The closing language of the opinion of this court in that case best described our disposition of it. Such language is: "Without further elaboration, it follows that Seaman was not a competent commissioner, and that the circuit court was right in holding and in setting aside the report of the commissioners and the judgment of the county court. The judgment of the circuit court must therefore be affirmed, and the cause remanded to the county court of Lincoln county, to be by it taken up and tried as if the original proceeding was presented to it for the first time, and to proceed with the cause without regard to anything that has heretofore been done in the cause, but in conformity herewith and with the statute." This opinion was handed down at the April term, 1903, of this court. The reason for thus disposing of the case is fully discussed in the opinion and further note of it need not be made herein.

Pending the appeal in the Jamison case, the three commissioners proceeded to let contracts for the work of constructing the required levees and drains. The contract was awarded to A. V. Wills & Son in 1894, and on October 21, said Wills & Sons entered into a contract in accordance with this award. Later, in 1895, this contract was assigned to Thomas E. Wilson. In said work were twelve miles of levee which Wilson constructed. The said drainage district, through its president and secretary, issued to Wilson warrants upon the treasury of said district from time to time as the work progressed. Some were paid, but the four involved in this suit were not paid for want of funds. These four aggregate $5672.56. The first is for $4437.10, and is dated May 22, 1896, and on its face calls for six per cent interest from date. The second is for $291.10, of date December 14, 1897, with interest as the first warrant. The third is for $279.79, of date February 4, 1901, with interest as above. The fourth is for $664.57, of date October 16, 1902, with interest as first stated. The first two above described were issued to Wilson and by him assigned to H. W. Perkins. The last two were issued direct to Perkins in lieu of other warrants theretofore assigned to him by Wilson. Perkins brought the suit, but died before the trial, and Wilson, who had been made his administrator, became party plaintiff.

Upon the filing of the mandate of this court with the county court that court proceeded as by our opinion directed. On November 13, 1903, the county court took up and heard said petition and found that the establishment of said drainage district was necessary, and again appointed three commissioners. In August, 1904, those commissioners filed their report, and on November 29, said report coming on for hearing was duly heard and by the court modified and approved, and on said date the court adjudged said district to be a drainage district under the name of

"King's Lake Drainage and Levee District," and such was adjudged to be a body corporate on that date. These commissioners proceeded with the work and completed the levee and other work as described in the original petition. The petition, after charging all the matters which we have hereinabove detailed in brief, then specifically says:

"That in the construction of said work said commissioners adopted, appropriated and used said old levee its entire length of twelve miles and made same a part of and included same in the work so by them to be done, as such commissioners, for and on the behalf of and as the corporate authority of the defendant King's Lake Drainage and Levee District, which thereupon and thereby received, accepted and appropriated the same with all the advantages and value thereof; and further that in pursuance of said report of said commissioners and of the said order and judgment of said court confirming same, large credits were given and allowed to the various land owners in said district on their assessments of benefits, for and on behalf of said twelve miles of levee so adopted, appropriated and used, thereby indirectly saving to the commissioners the full cost and expense originally incurred in the construction of said levee and for which the indebtedness herein declared on then existed and then and now remains unpaid.

"Plaintiff says that the cost of said twelve miles of levee to the first or original commissioners of said district and their successors so appointed as aforesaid was the sum of $18,690.92, and that same is and was reasonably worth that sum; and that for the building of same the said first named commissioners or their successors were unable to pay in full, but that said district was, at the time of the appointment of said last named or present commissioners and is yet, still largely indebted to plaintiff for the work of

building the same; said indebtedness being evidenced by the treasury warrants hereinbefore referred to and then and now owned and held by plaintiff, all as aforesaid, and which said warrants are next set forth, filed and described as follows, to-wit:''

Then follows a description of the warrants and the issuance thereof as we have shortly described above.

Plaintiff then charges that the district issuing to him the described warrants and the present defendant are one and the same. The petition in this regard reads:

''Plaintiff says that the defendant King's Lake Drainage and Levee District is a continuation of and is one and the same corporate body as the King's Lake Drainage and Levee District under contract with and for which the said Thomas C. Wilson constructed the said twelve miles of said levee and which, by its said first mentioned board of commissioners in consideration thereof, executed to him the said warrants as hereinbefore set out. That by accepting, adopting, appropriating and using the said twelve miles of said levee so constructed as aforesaid, and making same a part of the work necessary to be done in protecting and reclaiming the lands within said district, the defendant is, and in equity and good conscience should be adjudged to be held to have ratified and confirmed the acts of the said William J. Seaman, William H. Baskett and Frank L. Wilson, the first named board of commissioners, and their successors in office as aforesaid in constructing same and in the incurring of said indebtedness to said Wilson therefor so evidenced by said warrants now held and owned by plaintiff as aforesaid. And that in equity and good conscience the defendant is and ought to be held and adjudged to be liable to the plaintiff for the amount of said warrants and the interest accrued thereon. And that the defend-

ant and its present corporate authority are, and by reason of the premises ought to be held and adjudged to be, estopped and precluded from denying such liability. That plaintiff is without remedy, recourse or redress on said warrants or for the value of said work for which same were issued, or otherwise in the premises, against said district or the lands embraced and included therein or the owners thereof, except through or against the now legally constituted corporate body thereof, to-wit, the defendant herein.''

The petition then avers that by reason of the premises and facts ''an action hath accrued to the plaintiff to demand and recover against the defendant the sum of $567.56, the amount of the principal sum of said warrants numbered 5192, 189 and 218, and also lawful interest on the several sums mentioned in said warrants, respectively, from their respective dates aforesaid.''

A thorough examination of the petition shows that the action is not one upon the warrants themselves, but for a debt equal in amount to the warrants. The petition shows that this defendant was not incorporated until 1904 and that this judgment appealed from was entered in 1906. The old proceeding was torn up, root and branch, by the judgment of this court, in the case mentioned, and such opinion becomes the law of this case, whether right or wrong. With that opinion the contracts made and the warrants issued by the old board fell to the ground. What rights plaintiff may have are such as have accrued since the organization of defendant. So that if we count interest on the alleged balance at six per cent for two years, it does not make the amount reach the jurisdiction of this court. In other words, it is less than $7500. So that considering the amount involved at the date of the judgment, as such amount is gathered from all the facts pleaded, we are without jurisdiction.

There is, however, another phase of the case which demands consideration. The defendant is a drainage district. Is such district such a political subdivision of the State as to give us jurisdiction under the provisions of section 12, article 6, of the Constitution? We think not. It is true that we have said that it was a political subdivision of the State. [Morrison v. Morey, 146 Mo. 543.] But, so is a township or a school district. Whilst they are political subdivisions of the State, they are not such as are contemplated by the section of the Constitution, supra, referring to our jurisdiction. In School District v. Burris, 84 Mo. App. l. c. 662, SMITH, P. J., after reviewing our cases, including the Morrison case, supra, said: "But if a municipal corporation is not a political subdivision of the State in a jurisdictional sense it must follow that a levee district or a school district, each of which are but *quasi* public corporations, possessing only a portion of the powers of municipal corporations, are not political subdivisions of the State in such jurisdictional sense. The courts of appeal have uniformly exercised a superintending control over the inferior courts of record in respect to cases therein originating when one of the parties thereto was a school district; and this jurisdiction, so far as we are advised, has never before been questioned. We must hold that a school district in a jurisdictional sense is not a political subdivision of the State."

The Burris case was approved by this court in Banc, in an opinion by BRACE, J., in which all concurred, in the case of School District v. Boyle et al., 182 Mo. 347.

In Morrison v. Morey, supra, whilst we there said that a levee district was a political subdivision of the State, yet, we did not say it was such within the meaning of the constitutional provision defining the jurisdiction of this court. The question of jurisdiction was not raised, and for reasons apparent on the

record in that case. There was in that case a constitutional question which clearly conferred jurisdiction upon this court in that case.

So, too, in State ex rel. Stotts, Collector, v. Wall et al., 153 Mo. 216, following the Morrison case, we incidently said that a levee district was a political subdivision of the State, but the question of the jurisdiction on that point was not raised. In fact the question of jurisdiction was not raised at all, and the title of the case would indicate the reason.

In the later case of State ex rel. v. Drainage District, 192 Mo. 517, an original action of mandamus in this court, where the amount involved was $65,000 in bonds, the question of jurisdiction was not raised. We there said: "The first contention of the relator is that the respondent district is a private and not a public corporation, and therefore the Act of 1905 could not have the effect of repealing the old law under which the respondent corporation was acting. This contention is untenable. In Morrison v. Morey, 146 Mo. l. c. 560, and in Land & Stock Co. v. Miller, 170 Mo. l. c. 253 and 258, a like contention was held untenable, and drainage corporations were held to be public, governmental agencies, and in no sense private corporations. The conclusions then reached are emphasized both by section 8253, Revised Statutes 1899, and by section 8253 of the Act of 1905, both of which declare that the judgment of the circuit court shall duly declare and decree said drainage district 'a public corporation of this State.' Thus such corporations have been declared to be public corporations, both by this court, and by the express declaration of the acts under which they are authorized to be formed and to exist."

In the case of Kansas City v. Neal, 122 Mo. l. c. 234, we said: "That Kansas City is not a political subdivision of the State, within the meaning of the Constitution, is equally clear. Subdivision means to

divide into smaller parts the same thing or subject-matter, and no city or town in this State is a sub-division thereof except the city of St. Louis, and it became so under sections 20, 22 and 23, article 9, State Constitution, and by the act of the Legislature in pursuance thereof setting off certain defined boundaries defining the city limits, and conferring upon the city all the rights and privileges possessed by a county. Voters in all other cities and towns act in common with the voters of the county or counties in which they may be located in electing county and state officials, and do not simply, because of their incorporation, become subdivisions of the State. Kansas City is within Jackson county and is not a subdivision thereof or of the State.''

We are of the opinion that the words, ''other political subdivisions of the State,'' as used in section 12, article 6, following as they do, the word ''county,'' mean such political subdivisions as may be created having powers similar to those of a county, and do not refer to townships, school districts, levee districts, drainage districts, and such like minor political subdivisions of the State. We are thereof of the opinion that the defendant is not a political subdivision of the State in a jurisdictional sense and within the meaning of section 12, article 6, of the Constitution.

We have discussed only such questions as we had to discuss on the question of jurisdiction. In our judgment, we are without jurisdiction in this case, and the merits thereof we leave open for the St. Louis Court of Appeals, to which court we transfer the cause.

PER CURIAM.—The opinion of *Graves, J.*, in Division No. One, is adopted as the opinion of the court. *Valliant, C. J.,* and *Kennish, Ferriss,* and *Brown, JJ.,* concur; *Lamm* and *Woodson, JJ.,* dissent.