E. C. VANDAGRIFT, Receiver, Appellant, v. GRAND
COMMANDERY OF KNIGHTS TEMPLAR,
STATE OF MISSOURI, Respondent.

**St. Louis Court of Appeals, July 5, 1913.**

1. **COURTS OF APPEALS: Jurisdiction: Amount Involved.**
Where a petition in three counts demanded, in the aggregate,
an amount in excess of $7500, but two of the counts were
abandoned before judgment and the remaining count prayed
for damages in a less amount than $7500, the Court of Appeals
had jurisdiction of an appeal by plaintiff from a judgment
for defendant.

2. **APPELLATE PRACTICE: Supreme Court: Controlling Decis-
ions.** Under Sec. 6 of the Amendment of 1884 to Art. VI of
the Constitution, the Courts of Appeals must follow the last rul-
ing of the Supreme Court on the point involved.

3. **MONEY HAD AND RECEIVED: Misappropriation of Funds:
Right of Recovery.** Where the treasurer of a corporation,
who was also president of a bank in which he deposited the
corporation's funds, misappropriated such funds, and there-
after, in order to cover the misappropriation, paid obligations
of the corporation out of the bank's funds, the corporation,
which neither approved nor had knowledge of these transact-
ions, was not liable to the bank in an action for money had
and received; following Vandagrift v. Masonic Home, 242 Mo.
138.

Appeal from St. Louis Circuit Court.—*Hon. George C.
Hitchcock*, Judge.

AFFIRMED.

*John A. Eaton, E. H. McVey* and *McDonald &
Taylor* for appellant.

If the treasurer of a corporation is a defaulter,
and his defalcation is as yet unknown and unsus-
pected, and he steals money from a third person, and
places it with the funds of the corporation in order to
conceal and make good his defalcations, and the cor-
poration uses the money as its own, no other officer

knowing any of the facts, the corporation does not thereby acquire a good title to the money as against the true owner, since it is charged with the knowledge of its treasurer who was its sole representative in the transaction. Cotton Mills v. Orchard Mills, 147 Mass. 268; Foote v. Cotting, 195 Mass. 55; Brookhouse v. Publishing Co., 73 N. H. 68; Bank v. Dunbar, 118 Ill. 625; Ditty v. Bank, 75 Fed. 769; Elec. Co. v. Elec. Co., 65 Fed. 341; Bank v. Munger, 95 Fed. 92; Aldrich v. Bank, 176 U. S. 618; Bank v. Kellogg, 56 N. W. 1071; Bank v. Clark, 43 N. E. 913; Thompson v. Hynds, 15 Utah, 389; Bank v. Milling Co., 1 S. D. 388; Gunster v. Scranton, I. H. & P. Co., 181 Pa. St. 327; 3 Am. & Eng. Ann. Cas. 1145; Bank v. Lumber Co., 102 Mo. App. 75; Bank v. Badger L. Co., 54 Mo. App. 327; Bank v. Badger L. Co., 60 Mo. App. 255; Watson v. Bigelow, 47 Mo. 413; Davis v. Krum, 12 Mo. App. 279; Mayor v. Old, 57 Mo. App. 644; Bohlmann v. Rossi, 73 Mo. App. 315; Fahy v. Springfield Gro Co., 57 Mo. App. 77; Huttig v. Gitchell, 69 Mo. App. 121.

*Jamison & Thomas* for respondent.

The evidence does not tend to show that any money was ever received by the defendant corporation from the Bates National Bank. The most that can be claimed is that there is testimony tending to prove that certain warrants drawn by the grand recorder of the Grand Commandery upon F. J. Tygard, its grand treasurer, and payable to different persons, were paid to such persons out of the funds of the Bates National Bank, or by said bank. The Bates National Bank could not make defendant its debtor by the payment of warrants (drawn on defendant's treasurer) without defendant's request. One who voluntarily pays the debts of another does not become a creditor. Handlan v. Morgan County, 57 Mo. 114; Watkins v. Richmond College, 41 Mo. 302.

PER CURIAM.—This is a suit for money had and received. The finding and judgment were for defendant and plaintiff prosecutes the appeal.

Plaintiff is the receiver of the Bates National Bank at Butler, Missouri, and defendant, incorporated, is the Grand Commandery of Knights Templar of the State of Missouri. It appears that F. J. Tygard, who was the grand treasurer of defendant corporation, was also the president of the Bates National Bank, which afterwards became insolvent and in behalf of which the present suit is prosecuted by the receiver of the bank duly appointed.

The case was referred in the circuit court to Hon. R. F. Walker, then a practicing lawyer in St. Louis but now a member of the Supreme Court of the State. Judge Walker heard the testimony and reported his finding of facts and conclusions of law to the court. Thereafter, exceptions to the referee's report, filed on the part of plaintiff, were considered by the court and overruled, and the court approved and adopted the report in full. We will copy here so much of the referee's report as is relevant to a proper disposition of the appeal—that is, his statement of the issues and finding of fact thereon. The conclusions of law set out in that report are omitted, for the reason that the judgment of the Supreme Court, to be hereafter referred to, in the companion case to this is alone sufficient on that score. The evidence in the record abundantly supports the finding of facts as revealed in the referee's report and that report affords as well a full statement of the case.

## "FINDING OF FACTS.

"From the evidence offered, I find the following facts: That this is a suit brought by the receiver of an insolvent national bank, which was located at Butler, Missouri, against the Grand Commandery of Knights Templar of the State of Missouri. The Grand

Commandery, an organization of Masons, was for a number of years a voluntary association, but in 1898 it was incorporated under the benevolent, religious and scientific articles of the chapter in the Missouri statutes entitled 'Corporations,' and continues in existence as such association.

"This action is based on an amended petition containing three counts. The first is on a promissory note alleged to have been executed for the defendant by F. J. Tygard, its treasurer, for the sum of $3,500, dated March 12, 1906, payable on demand to the Bates National Bank or order, with interest at the rate of eight per cent per annum; it is further alleged that $500 has been paid on the principal, and that the interest has been paid to July 1, 1906.

"The second count is upon a promissory note alleged to have been executed for the defendant by F. J. Tygard, its treasurer, for the sum of $1500, dated April 6, 1906, payable on demand to the Bates National Bank or order, with interest from date at the rate of eight per cent per annum, and that the interest has been paid on said note to July 1, 1906.

"The third count is for money had and received in the sum of $3894.22, with interest thereon at the rate of six per cent per annum from the 20th of September, 1906.

"The answer alleges that the defendant is a benevolent, nontrading corporation and that it was not authorized, under its articles of association or its by-laws, to execute the note described in the first count of plaintiff's amended petition; that the Grand Commandery of Knights Templar of the State of Missouri had no authority to execute the note described in the said first count; that defendant did not sign, make, execute or deliver to the said Bates National Bank the said note, and that F. J. Tygard had no authority to make, sign, execute or deliver on behalf of the defendant to the Bates National Bank the said note. Defend-

ant denies that any payment has been made upon the principle sum of said note, and denies that the interest thereon has been paid by the defendant to July 1, 1906, or that defendant has paid any interest on said note or recognized the note in any way as the note of the defendant, and defendant denies that there is now due upon the said note $3000, or any other sum. To the second count the defendant makes the same answer, varying the same to suit the different state of facts set forth in plaintiff's second count. To the third count defendant interposes a general denial.

"The first and second counts of defendant's answer are sworn to by the grand commander, who is the chief officer of the defendant.

"Plaintiff's reply to defendant's answer consists, first, of a general denial of any new matter contained in the answer, and second, that defendant is estopped by its conduct from denying its treasurer's authority to make, execute and deliver the promissory notes described in plaintiff's amended petition, the conduct of the defendant constituting such alleged estoppel being set up in the reply.

"Tygard was the treasurer of the defendant, and had been elected annually as such for a period of about nineteen years. He was also president of the bank of which the plaintiff is the receiver.

"The funds of the Grand Commandery were secured by the subordinate commanderies requiring an annual *per capita* payment of each member of one dollar, which was subsequently transmitted by each of the subordinate commanderies to the grand recorder and was by him paid over to the grand treasurer; this money, instead of being transmitted to Tygard, grand treasurer, direct, was, under his direction, placed in the State National Bank in the city of St. Louis to the credit of the Bates National Bank at Butler, Missouri, for the use of F. J. Tygard, grand treasurer of the Grand Commandery of Knights Templar of Missouri.

Tygard was, during all the time herein mentioned, a resident of Butler, Missouri.

"The objects of the Grand Commandery, as defined by its articles of association, are declared to be 'to promote the tenets of Knight Templar Masonry as promulgated and taught by the Grand Encampment of Knights Templar of the United States of America.' Annual meetings of the Grand Commandery were held, at which its business was transacted; it never had a board of directors or trustees and its executive body consisted of its grand officers; the only outlays it made were for the expenses of its annual meetings and the payment of its officers in collecting dues from subordinate commanderies.

"The Grand Commandery had general supervision over the affairs of the association. The grand recorder collected the dues from the subordinate commanderies and paid them over to the grand treasurer. The grand treasurer was authorized to pay out such money from the funds as might be ordered by the Grand Commandery on warrants drawn by the grand recorder. The duties of the grand treasurer were to receive from the grand recorder all moneys collected by him on account of the Grand Commandery, to receipt for same and to have possession and custody of all funds and other securities belonging to the Grand Commandery, and pay out such sums of money as might be ordered by the Grand Commandery on warrants drawn by the grand recorder. There was no special depository designated by the Grand Commandery, and under the grand treasurer's, Tygard's, direction, the funds of the Grand Commandery in the custody of the treasurer were kept in the State National Bank in the city of St. Louis, where they were deposited to the credit of the Bates National Bank for the use of the grand treasurer, F. J. Tygard. Whenever a deposit was made by the grand recorder, one of the deposit slips would be retained by the bank and the

other forwarded to F. J. Tygard, grand treasurer, at Butler, Missouri; whenever such a deposit was made in the State National Bank a similar credit was made upon the books of the Bates National Bank, either to the account of F. J. Tygard, treasurer of the Grand Commandery, or to F. J. Tygard personally, or to F. J. Tygard, treasurer of the Masonic Home; such credits to the accounts mentioned in the books of the Bates National Bank were made under the direction of Tygard, he having complete control of the funds after they were deposited in the State National Bank. The officers of the Grand Commandery knew nothing of the manner in which Tygard credited the amounts he received in the Bates National Bank. Except in the case of the two notes described in the petition, there is no evidence that Tygard ever attempted to make notes or create any obligations for the defendant; there is no evidence that the grand commander or any other officer of the defendant knew of the existence of the notes described, or that any money had been secured for the Grand Commandery by reason of any such obligations. No money ever came to the Grand Commandery from the Bates National Bank; warrants drawn on F. J. Tygard, treasurer, may have been paid out of the bank's funds, as stated in plaintiff's amended petition, but without the defendant's knowledge. Tygard's accounts as treasurer of the defendant were regularly kept and submitted to the Grand Commandery at its annual meetings. These reports showed the receipts and expenditures for the preceding year, and that the treasurer had, at the time of the report, a balance in his hands belonging to the Grand Commandery. The reports so made by Tygard were published in the proceedings of the Grand Commandery and were distributed among the Knights Templar and subordinate commanderies. A number of these reports for twelve or more different years

were found in the Bates National Bank, and were offered in evidence.

"The Bates National Bank was declared insolvent and went into the hands of a receiver September 20, 1906; the notes described in the petition were found in the bank when it was closed, and the amount claimed to be due plaintiff in the third count of his petition is made up from the books of the bank.

"At the time Tygard as treasurer was creating the obligations referred to in the petition he had in his hands as grand treasurer large sums of money belonging to the defendant; on March 12, 1906, the date of the note for $3500, he had $4611.37, funds belonging to the defendant; and on April 6, 1906, the date of the note for $1500, he had on hand the same amount above stated; in December, 1906, when he ceased to be grand treasurer, he had on hand $520.70, which he paid to his successor.

"There is no evidence that the grand treasurer ever paid out any of the funds of the Bates National Bank in discharge of the obligations of the defendant, with the knowledge or approval of the latter."

From a reading of the referee's report and the judgment of the court approving it and for defendant on all counts of the petition, it would seem that the amount in dispute between the parties exceeds the appellate jurisdiction of this court—that is, $7500—for it appears on the face of the record that plaintiff prosecutes the appeal as though he still asserts all of the claims declared upon in the petition. But, upon reading the record, it appears that, even before judgment, plaintiff abandoned his claim asserted in the first and second counts of the petition—that is, on the two promissory notes described in the referee's report—and continued to assert only his cause of action for money had and received, as disclosed in the third count, for $3894.22. Therefore, though it be that the case comes here on plaintiff's appeal from a judg-

ment in favor of defendant denying his rights *in toto*
and this, too, on a petition praying judgment for more
than $7500, our jurisdiction in the premises is clear;
for when it appears that the amount originally claimed
exceeds the appellate jurisdiction of this court, but
has thereafter during the trial been abandoned or re-
duced in part by the voluntary action of plaintiff, so
as to render the real amount in dispute and involved
in the appeal to be actually less than $7500, the juris-
diction for review resides here.   [See Vanderberg v.
Kansas City, Mo., Gas Co., 199 Mo. 455, 97 S. W.
908; Wilson v. King's Lake Drainage & Levee Dist.,
237 Mo. 39, 139 S. W. 136.]

By the Constitution of the State, we are com-
manded to adhere to the last ruling of the Supreme
Court on any question of law or equity, and such af-
fords an unvarying rule of decision here, whatever
may be the view of this court touching the matter.
In obedience to this command, this case should be
disposed of in accordance with the view of the Su-
preme Court expressed in the companion case of Van-
dagrift v. Masonic Home of Missouri, 242 Mo. 138,
145 S. W. 448.

It appears that Tygard, the treasurer of defend-
ant corporation, was at the same time treasurer of the
Masonic Home, another and distinct corporation. Dur-
ing all of the years Tygard occupied the position of
treasurer for either of these institutions, he was pres-
ident of the Bates National Bank of which plaintiff
here is the receiver.   The theory of this case and of
the Masonic Home case is to the same effect, that
Tygard, the treasurer, first misappropriated the funds
of the Grand Commandery here, as it is said he did
in the Masonic Home case, and thereafter appropri-
ated funds of the bank of which he was president to
make good the shortage in his accounts as treasurer
of defendant, as it is said he likewise did as treasurer

176 Mo. App. 29

of the Masonic Home. Both cases proceed on the part of the receiver of the Bates National Bank as for money had and received.

It is argued here, as it was in the Masonic Home case, that the knowledge of defendant's treasurer, Tygard, as to his course of dealing, was the knowledge of defendant corporation; but the Supreme Court, in considering the circumstances of the case, did not accede to that view. We are unable to discover any appreciable distinction between that case and this, in so far as the proposition relied upon is concerned. In the instant case the referee states, ''No money ever came to the Grand Commandery from the Bates National Bank; warrants drawn on F. J. Tygard, treasurer, may have been paid out of the bank's funds, as stated in plaintiff's amended petition, but without the defendant's knowledge.'' Again, by the concluding paragraph of the referee's report, it appears the same finding of fact is restated. The referee says, ''There is no evidence that the grand treasurer ever paid out any of the funds of the Bates National Bank in discharge of the obligations of the defendant, with the knowledge or approval of the latter.'' Obviously this finding of fact, which appears to be amply supported by the evidence, is conclusive of the matter in judgment here, under the rule of decision declared by the Supreme Court in Vandagrift, Receiver, v. Masonic Home of Missouri, 242 Mo. 138, 145 S. W. 448.

It is unnecessary to further consider the arguments advanced for a reversal of the judgment, as the authority cited determines the proposition relied upon. The judgment should, therefore, be affirmed. It is so ordered.