THOMAS C. WILSON, Administrator, Appellant, v. KING'S LAKE DRAINAGE AND LEVEE DISTRICT, Respondent.

St. Louis Court of Appeals, July 5, 1913.

1. **DRAINAGE DISTRICTS: Defective Organization: De Facto Corporation.** A county court, by an order of record, ordered that certain territory be incorporated as a drainage district and appointed commissioners therefor, pursuant to Art. V of Chap. 122, R. S. 1899. One of the landowners affected filed a remonstrance against the report of the commissioners, which was overruled by the county court. He then appealed, successively, to the circuit court and to the Supreme Court. The latter court reversed the order purporting to create the district, on the ground that the wife of one of the commissioners owned land in the district, and remanded the cause to the county court, reserving to the petitioners, however, the right to proceed on the same petition and to have the same territory and the same inhabitants incorporated. [King's Lake Drainage & Levee District v. Jamison, 176 Mo. 557.] *Held,* that, inasmuch as the order of the county court was not void on its face, the corporation organized thereunder was a *de facto* corporation.
   *Held,* by REYNOLDS, P. J., dissenting, that under the decision in King's Lake Drainage & Levee Dist. v. Jamison, supra, especially in view of the interpretation of that decision in Wilson v. King's Lake Drainage & Levee Dist., 237 Mo. 39, the order of the county court was void and that the corporation attempted to be organized thereunder was not a *de facto* corporation.

2. ———: ———: ———: **Relation of Succeeding Corporation: Liability for Work Performed for Old Corporation.** A county court, by an order of record, ordered that certain territory be incorporated as a drainage district and appointed com-

missioners therefor, pursuant to Art. V of Chap. 122, R. S. 1899.
One of the landowners affected filed a remonstrance against
the report of the commissioners, which was overruled by the
county court. He then appealed, successively, to the circuit
court and to the Supreme Court. The latter court reversed the
order purporting to create the district, on the ground that the
wife of one of the commissioners owned land in the district,
and remanded the cause to the county court, reserving to the
petitioners, however, the right to proceed on the same petition
and to have the same territory and the same inhabitants in-
corporated, which right was availed of and a new corporation
organized, covering the same territory and inhabitants. The
original corporation had contracted for the construction of a
levee, and the work was completed and warrants on the treas-
ury were issued for the contract price thereof. The new cor-
poration took over this levee and it became part of the levee
which it was organized to construct. *Held*, that the new cor-
poration was a continuation of the *de facto* corporation which
went out of existence by virtue of the judgment of the Supreme
Court, and hence it is liable in equity for the value of the levee
constructed for the *de facto* corporation and taken over by it,
and although the warrants issued for such work by the *de
facto* corporation are void, the obligation to pay for the work
still subsists.

*Held*, by REYNOLDS, P. J., dissenting, that the Supreme Court
having held that the corporation attempted to be organized
under the first order of the county court was not a legally
organized body, such putative corporation could not have
a successor; and that the drainage district subsequently
organized is not liable for the value of the levee, since its
commissioners had no authority to accept the levee and
have none to pay for it.

3. PLEADING: Demurrer Admits Well-pleaded Facts. A de-
murrer to a petition admits all facts that are well pleaded.

4. DRAINAGE DISTRICTS: Character: Municipal Corporations.
A drainage district, organized under Art. V of Chap. 122, R. S.
1899, is a municipal corporation.

5. MUNICIPAL CORPORATIONS: Reorganization: Liability of
Succeeding Corporation. Municipal corporations do not ex-
tinguish their debts by merely changing their names or re-
organizing under new charters, and especially is this true where
the new corporation succeeds the old one to conserve the same
purposes, for the same inhabitants, in the same territory.

6. DRAINAGE DISTRICTS: Defective Organization: Relation of
Succeeding Corporation: Liability for Work Performed for
Old Corporation: Estoppel. A county court, by an order of
record, ordered that certain territory be incorporated as a

drainage district and appointed commissioners therefor, pursuant to Art. V of Chap. 122, R. S. 1899. One of the landowners affected filed a remonstrance against the report of the commissioners, which was overruled by the county court. He then appealed, successively, to the circuit court and to the Supreme Court. The latter court reversed the order purporting to create the district, on the ground that the wife of one of the commissioners owned land in the district, and remanded the cause to the county court, reserving to the petitioners, however, the right to proceed on the same petition and to have the same territory and the same inhabitants incorporated, which right was availed of and a new corporation organized, covering the same territory and inhabitants. The original corporation had contracted for the construction of a levee, and the work was completed and warrants on the treasury were issued for the contract price thereof. The new corporation took over this levee and it became part of the levee which it was organized to construct. *Held*, that Sec. 5573, R. S. 1909 authorized the new corporation to take over the levee already constructed, and its action in so doing being, therefore, within the scope of its powers, it was estopped from denying reasonable compensation to those who constructed the levee and who had not been compensated, even though the body for which such work was performed was not even a *de facto* corporation.

*Held*, by REYNOLDS, P. J., dissenting, that in view of the decision of the Supreme Court, declaring that the corporation attempted to be organized under the order reversed had no legal existence, Sec. 5573 is not applicable, since the levee was "not constructed under any law of this State." *Held, further*, that the estoppel theory should not be applied, for the reason that the claim asserted is void, and, to recover on the theory of an estoppel, the claim asserted must be valid. *Held, further*, that the commissioners of the drainage district had no authority, under the statute, to accept or pay for the levee, and that their act in accepting and using it, not being within their powers, constitutes no estoppel against the landowners of the district.

7. **MUNICIPAL CORPORATIONS: Estoppel: Ultra Vires and Intra Vires.** While an estoppel may not be invoked against a municipal corporation, where it acts beyond the scope of the power conferred upon it, yet where it enters into a contract or becomes obligated by operation of law, within the scope of its powers, the doctrine of estoppel obtains against it with the same force and effect as against an individual.

8. **ACTION: Splitting Cause of Action: Pleading: Sufficiency of Petition.** In an action against a drainage district for the value of work performed for a preceding district by plaintiff's

assignor, the petition is *held* invulnerable against an attack that it showed that plaintiff sued for only a portion of the amount due for performing such work.

*Held*, by REYNOLDS, P. J., dissenting, that the petition discloses that other claims growing out of the same transaction are outstanding and, therefore, the petition is bad because it shows a splitting of the cause of action counted on.

9. **DRAINAGE DISTRICTS: Defective Organization: Relation of Succeeding Corporation: Liability for Work Performed for Old Corporation: Equity: Defenses.** A levee, constructed by plaintiff's assignor under a contract with a drainage district, which, because of defects in its organization, was adjudged by the Supreme Court to have no legal existence, was taken over by a succeeding drainage district. Plaintiff brought suit against the latter district on the theory that it was liable in equity for the reasonable value of the levee which it had thus appropriated and for which neither plaintiff nor his assignor had been compensated. *Held*, that plaintiff was not precluded from recovering, on the ground that his assignor constructed the levee while the case in which such adjudication was made was pending in the Supreme Court and that the claim was therefore without equity, since the contract was made with a *de facto* corporation before the appeal was perfected, and the work sued for was performed before the Supreme Court invalidated such corporation.

*Held*, by REYNOLDS, P. J., dissenting, that plaintiff's assignor had constructive notice, at the time he was constructing the levee, that proceedings, challenging the validity of the organization of the putative corporation which awarded him the contract, were pending, so that he was not an innocent party, and hence neither he nor his assignor is entitled to the aid of a court of equity to recover the value of such work.

Appeal from Lincoln Circuit Court.—Hon. *James D. Barnett*, Judge.

REVERSED AND REMANDED. CAUSE CERTIFIED TO SUPREME COURT.

*F. L. Schofield* and *E. B. Woolfolk* for appellant.

*O. H. Avery* and *Wm. A. Dudley* for respondents.

NORTONI, J.—This is a suit in equity and the question for decision arises alone on the face of the bill. Defendant interposed a demurrer to plaintiff's

bill and the court sustained it. From this judgment so sustaining the demurrer, plaintiff prosecutes the appeal here. Omitting caption and signatures, the bill is as follows, however the italics employed therein are our own:

"Plaintiff states that at all the times hereinafter mentioned the defendant was and yet is a body corporate duly incorporated as a drainage district under and by virtue of article five of chapter one hundred and twenty-two of the Revised Statutes of Missouri, 1899, and by virtue of the proceedings in the county court of Lincoln county, Missouri, in a certain cause therein pending entitled—'In the Matter of King's Lake Drainage and Levee District,' and by virtue of the certain findings, orders and judgments of said court in said cause duly made and entered of record therein on the 25th day of May, 1895, and on the 29th day of November, 1904.

"Plaintiff further states that the lands embraced and included within and affected by said drainage district lie partly in Lincoln county and partly in Pike county, both in the State of Missouri, and that the greater part of said lands lie in the said county of Lincoln.

"That heretofore, to-wit, on the —— day of ——, 1894, there was filed in the office of the clerk of the county court of said Lincoln county a petition duly signed by the majority of the owners of all the lands in said above mentioned district and by the owners of more than half of said lands, all of said petitioners and owners being adults of lawful age, praying and applying for the organization of a drainage district embracing said lands by the said name of 'King's Lake Drainage and Levee District,' and with the boundaries thereof proposed, setting forth said proposed name and the necessity for said district and the organization thereof, and for the construction therein and thereby of drains, ditches, levees and other works,

Wilson v. Drainage District.

and the maintenance and keeping same in repair, with a description of its and their proposed starting point, route and termini, and a general description of the said lands, proposed to be affected thereby, with the names of the owners of all said lands, and praying and applying for the appointment of commissioners for the execution of such proposed work according to the provisions of the act aforesaid; and which said petition was accompanied by an affidavit giving the names and places of residence of such of the owners of said lands within said district as were nonresidents of said counties of Lincoln and Pike so far as known, and so far as unknown stating that upon diligent inquiry their places of residence could not be ascertained.

"That thereupon the clerk of said county court of Lincoln county duly docketed said matter and cause on the docket and record of his said court for further proceedings therein under and by the name and title, 'In the matter of the King's Lake Drainage and Levee District,' and that all the proceedings in said court hereinafter referred to were had and done in said matter and cause and under the name and title aforesaid, and that he caused due notice of the presentation and filing of said petition to be given in all the modes and within the time provided by law to all the owners of said lands and all others interested therein; which said notices contained a statement that said petition had been filed in said court, the date when same was filed, the starting point, route, termini and general description of the said proposed work, the boundaries of said proposed drainage district and the said name thereof, and that the petitioners would ask a hearing of said petition at the July term of said county court then next to be holden at the courthouse in the city of Troy in said county.

"That thereafterwards such proceedings were duly had in said county court, that, on to-wit, the 17th

day of August, 1894, at and during a term and sitting of said court duly held in the courthouse in said city of Troy, the hearing of and upon said petition was duly had by and before court, and the said court, after hearing all competent evidence offered before it for and against said petition and the various matters involved in said proceeding, duly found and adjudged that said petition had been signed by a majority of the owners of all the lands in said district and by the owners of a majority of all said lands; and it further then and there appearing to the said court that the said proposed drains, ditches, levees and other works were necessary and would be useful for the drainage of the said lands proposed to be drained thereby for agricultural and sanitary purposes, the said court then and there duly so found, declared, ordered and adjudged; and thereupon by its further order and judgment in said proceeding said court appointed William J. Seaman and William H. Baskett of Lincoln county and Frank L. Wilson of Pike county as commissioners to lay out and construct said proposed works.

"That thereafterwards the said commissioners after having been duly qualified and having entered into bond according to law, duly conditioned, filed and approved, entered upon the duties of their said office and at their first meeting after their appointment and qualification duly appointed one of their number, viz., the said William H. Baskett, as secretary.

"That thereafterwards and within the time as directed by said court the said commissioners went upon and duly examined the lands described in said petition proposed to be drained and protected and the lands over and upon which the said work was proposed to be constructed, and thereupon determined and reported to the said court by their written report duly made and filed therein on the 6th day of March, 1895, as follows: First, that the starting point, route

and termini of said proposed work and the proposed location thereof were in all respects proper and feasible. Second, the probable cost of the said proposed work, including all incidental expenses and the costs of the proceedings therefor. Third, the probable cost of keeping the same in repair after the work should be completed. Fourth, what lands, with a particular description thereof, would be injured by said work and the aggregate amount of such injuries, and awarding to each tract, lot, easement or interest, the amount of damages so determined by them. Fifth, what lands, with a particular description thereof, would be benefited by the construction of the said proposed work, and showing that the benefits exceeded the aggregate cost of constructing said work, including all incidental expenses, costs of proceeding and damages; and therein apportioned and assessed the estimated cost of the same on the said lands so benefited, setting down opposite to the correct description of each tract, lot, easement, interest of servitude, the proportion of such costs assessed as benefits thereon. Sixth, that the proposed district as set out in the said petition filed would not embrace all the lands that might be damaged or benefited by the proposed work, and setting forth and reporting what additional lands and a particular description thereof would be benefited or damaged and the amount of benefits and the amount of damages to each said tract of additional land, in the same manner as though such additional lands had been included in the said original petition. And the said commissioners reporting in their said report that the whole cost of such said proposed work would be less than the benefits resulting therefrom, they located, designed, laid out and planned same in the manner as to them seemed best designed to drain and protect the lands of all the parties interested with the least damage and greatest benefit to all the lands to be affected thereby, and had proper surveys, profiles, plans and

specifications made for such proposed work and re-
ported to the said court in their said report their
conclusions thereon, with a copy of said surveys, pro
files, plans and specifications and their recommenda-
tions as to the best and cheapest method of doing the
said proposed work.

"That upon the filing of said report by said com-
missioners, the said county court, to-wit, on the 4th
day of April, 1895, duly made and entered of record
therein an order fixing the 16th day of May, 1895,
as the time, and the courthouse in the city of Troy
as the place, when and where all persons interested
in said report or in the work referred to therein, might
appear and contest the confirmation thereof.   That
thereupon the clerk of said court caused due notice
of the said time and place of said hearing and of the
amount of benefits and damages assessed and awarded
by the said report of the said commissioners and con-
taining a description of the lands affected, by publi-
cation thereof for three successive weeks prior to said
day so set for such hearing in the 'Lincoln County
News,' a newspaper published in said county, and
also by duly serving a copy of such notice on each
of the persons and corporations affected thereby who
reside in either Lincoln or Pike county aforesaid, at
least twenty days before the said day so fixed for
said hearing.

"That thereupon such proceedings were duly had
in and before said court that all objections, remon-
strances and other questions and issues arising on said
report and the assessment of benefits and award of
damages made therein and all other matters jurisdic-
tional and otherwise arising out of or concerning the
proceedings in said court were duly heard, tried, con-
sidered and adjudged by and before said court; and
the said court, to-wit, on the 25th day of May, 1895,
having duly found and adjudged that all the proceed-
ings therein had been and were regular and valid, and

after having duly modified said report of said commissioners so as to conform to said court's findings, did, by its order and judgment duly given and entered and yet remaining of record therein, duly confirm said report, and ordered, adjudged, declared and decreed that said report should be effective, binding, final and conclusive, and that the said proposed work and the said drainage district be authorized and established and the assessments of benefits made therefor approved and confirmed.

"That, upon the entering of record by said court of said order and judgment of confirmation of said report, said drainage district was by the further order and judgment of said court declared to be a body corporate by the name aforesaid. That thereupon immediately afterwards the said commissioners duly adopted a common seal for said corporate body and that said common seal has been and is the common seal of the defendant in this cause.

"Plaintiff further states that after the proceeding and judgment last aforesaid the said commissioners and their successors in office appointed and qualified in the manner provided by statute continued in their duties as such as the same were prescribed by law and by the orders of said court, and immediately proceeded with the building and construction of the said levees, drains, ditches and other work within said drainage district, at all times acting in that behalf for and as the duly constituted corporate authority thereof.

"That, in the prosecution of the said work of construction, the said named commissioners, acting as aforesaid for and on the behalf of the said drainage district, on to-wit, the —— day of ——, 1894, after due advertisement for sealed bids therefor by notice thereof duly published according to law in a newspaper issued and published in said Lincoln county, duly let and awarded certain work of construction of said

levees, drains, ditches and other work to A. V. Wills & Sons, they being the lowest responsible bidders therefor; and thereupon, to-wit, on the 21st day of October, 1895, entered into contract with said A. V. Wills & Sons for the construction of said work so let and awarded to them including the twelve miles of levee hereinafter referred to.

"That thereafterwards, to-wit, on the —— day of ——, 1895, the said A. V. Wills & Sons duly assigned and delivered said contract and all their rights and interests therein and thereunder to Thomas C. Wilson for a valuable consideration paid them by him therefor.

"Thereafterwards the said Thomas C. Wilson entered upon the construction of said work, including said twelve miles of levee, under and in pursuance of the terms and provisions of said contract, and from time to time during the progress thereof estimates of the work of such construction upon the said twelve miles of levee done by him were duly made by said commissioners and their successors in accordance with law and the terms of said contract; and for the work of construction so done upon said levee by him, said Wilson, the commissioners from time to time drew and delivered to him the certain treasury warrants of said drainage district for the various sums corresponding in amounts with the value of said work done upon said levee and according to the prices therefor fixed by said contract. That is to say, that said warrants were, in form, an order drawn in writing, addressed to the treasurer of the board of commissioners of the King's Lake Drainage and Levee District, signed by one of the said commissioners as president and attested by the secretary under the corporate seal of said drainage district, ordering and directing the payment to said Wilson out of the treasury and funds of said district the certain sums mentioned in said warrants respectively. And plaintiff says that the

several warrants hereinafter more specifically set out
and described were issued and delivered to said Wil-
son in the manner and for the consideration of his said
work of construction upon said twelve miles of levee
as aforesaid, or were issued to the plaintiff, Henry W.
Perkins, the assignee of said Wilson, in lieu and stead
of other warrants previously and originally issued to
said Wilson in the manner and for the consideraton
aforesaid; and that for each and every of the said
warrants hereinafter more specifically set out and de-
scribed, the said King's Lake Drainage and Levee
District, defendant herein, received full value in the
work done by said Wilson in and about the construc-
tion of said levee in manner and form as is hereinafter
more fully set out. That the said twelve miles of levee,
for the construction of which the said warrants were
issued and delivered as aforesaid, was constituted and
embraced in the work authorized, ordered and directed
by said county court both by its order and judgment
of the 25th of May, 1895, aforesaid, confirming the
said report of said first named commissioners, and by
its other and further order and judgment duly made
in said cause and proceedings on the 25th day of No-
vember, 1904, confirming the report of other commis-
sioners duly appointed by said court in the manner
and for the reason hereinafter set out.

''Plaintiff further states that on the day set for
the hearing of the said report of the said first named
commissioners in and before said county court one W.
D. Jamison, the owner of certain lands within said
district and affected by the proposed work, duly ap-
peared in said court and objected to and remonstrated
against said report, setting forth various causes for
such objections and remonstrance duly verified by affi-
davit. Thereupon a time was by said court fixed for
the hearing of said objection and at the time so fixed
and upon due hearing and trial thereof said remon-

176 Mo. App. 31

strance and objections were by the said court over-
ruled and disallowed, and the said report of the said
commissioners, as the same was modified by order of
court, was duly confirmed as hereinbefore stated. That
thereupon on due appeal to the Supreme Court of the
State of Missouri by said Jamison from said order
and judgment of said county court overruling his said
remonstrance and objections and confirming said re-
port, the Supreme Court afterwards, to-wit, on the 2d
day of July, 1903, by its order and judgment in said
cause, reversed the said judgment of said county court
on the sole ground that said W. J. Seaman, one of
said commissioners, was not a competent person to
act in that behalf as such, in that he was interested in
certain lands within the limits of said district or af-
fected thereby, and thereupon remanded the cause
back to the said county court with directions to take
same up for hearing and trial upon the original peti-
tion filed therein and proceed with said cause without
regard to anything that had been theretofore done
therein. Said judgment of reversal and order remand-
ing said cause will be found in the report thereof in
volume 176, page 557, of the reports of cases deter-
mined in the Supreme Court of the State of Missouri.

"That upon the filing in said county court of the
said mandate and directions of the Supreme Court,
the said county court proceeded in said matter and
cause as by said mandate directed, and that such fur-
ther proceedings were had therein that on, to-wit, the
13th day of November, 1903, the said petition for the
establishment of said drainage district again came on
to be heard and the said court then and there again
duly found, declared and adjudged that the establish-
ment of said drainage district in accordance with the
prayer of said petition was necessary for the drain-
age and reclamation of the lands in said district for
agricultural purposes, and thereupon, by its further
order and judgment duly given and entered in said

cause and proceeding, appointed Jesse J. Shaw and the said W. H. Basket of Lincoln county and Harry Wells of Pike county, Mo., three competent householders and resident taxpayers of said counties, as commissioners to lay out and construct the proposed work in accordance with the statutes in such cases made and provided in all respects as if and as though much of said work had not already been accomplished and done under and by virtue of the earlier proceedings in said cause, whereas in truth and in fact much of said work had been done under and by virtue of said earlier proceedings including the construction by said Thomas C. Wilson of said twelve miles of levee, all as hereinbefore fully set out.

"That thereafterwards said last named commissioners were duly qualified according to law and entered upon the discharge of their duties in that behalf and that they and their duly appointed and qualified successors in office have since been and are yet the duly appointed qualified and acting commissioners of the said King's Lake Drainage and Levee District, defendant herein.

"That afterwards, to-wit, on the 9th day of August, 1904, the said last named commissioners, having fully performed their duties in the premises, duly filed in said court in said cause and proceeding their report setting out therein all the matters as required by law. Thereupon such further proceedings were duly had in said cause that on November 29, 1904, said report of said commissioners came to be heard and for trial in and before said court, and the same having been modified in accordance with the previous orders and directions of said court duly given and entered therein, was, by the finding, judgment and order of said court duly given and entered of record, in all respects approved and confirmed and the said work established and authorized as set forth in said report as modified and the assessments of benefits as made

and shown in said report together with the various credits allowed upon such assessments as hereinafter more particularly shown, duly approved and confirmed and the said district duly adjudged and declared to be a drainage district by the name of 'King's Lake Drainage and Levee District,' and to be a body corporate according to statute in such cases made and provided, by the name aforesaid.

"Plaintiff further states that in their said report, as the same was so aforesaid finally by said court approved and confirmed, the said commissioners found and reported that on the route of the levee as prayed for in said petition and as located by them there was at the time an old levee extending the full distance of twelve miles which had theretofore been constructed and built by the former commissioners of said district and *which said old levee the said commissioners further reported could, and would be, and had been, by them adopted, availed of and used as a part of the work committed to them to be done. And plaintiff says that said old levee so by said commissioners referred to, adopted, availed of and used, is the same levee built by said Wilson under and in pursuance of the said contract entered into with the commissioners of said levee district first appointed, all as is fully hereinbefore set out and declared.*

"That upon the final confirmation of said report in and by said court as aforesaid, the said commissioners last appointed proceeded with the construction and thereafterwards completed the levees, drains, ditches and other work proposed in said original petition and embraced and described in their said report, all as required by law and the various orders, judgments and directions of said county court duly made and entered in said cause and proceeding. That in the construction of said work said commissioners *adopted, appropriated and used said old levee its entire length of twelve miles and made same a part of*

*and included same in the works so by them* to be done as such commissioners for and on the behalf of and as the corporate authority of the defendant King's Lake Drainage and Levee District, which thereupon and thereby received, accepted and appropriated the same with all the advantages and value thereof; and further, that in pursuance of said report of said commissioners and of· the said order and judgment of said court confirming same, *large credits were given and allowed to the various landowners in said district on their· assessments of benefits, for and on account of said twelve miles of levee so adopted, appropriated and used, thereby indirectly saving to the commissioners the full cost and expense originally incurred in the construction of said levee and for which the indebtedness herein declared on then existed and then and now remains unpaid.*

"Plaintiff says that the cost of said twelve miles of levee to the first or original commissioners of said district and their successors so appointed as aforesaid was the sum of $18,690.92, and that same was and is reasonably worth that sum; and that for the building of same the said first named commissioners or their successors were unable to pay in full, but that said district was, at the time of the appointment of said last named or present commissioners and is‿yet, still largely indebted to plaintiff for the work of building the same; said indebtedness being evidenced by the treasury warrants hereinbefore referred to and then and now owned and held by plaintiff, all as aforesaid, and which said warrants are next hereinafter set forth filed and described as follows, to-wit:

"Plaintiff states that on the 22d day of May, 1896, one of said warrants, numbered 51, on the treasury of said King's Lake Drainage and Levee District, herewith filed marked 'Exhibit A,' was, by the due resolution and order of the then acting board of commissioners of said district, duly drawn and signed

by W. J. Seaman, president, and by W. H. Baskett, secretary, of said board and dated the day aforesaid, wherein and whereby the treasurer of said board was ordered and directed to pay to the said T. C. Wilson or order out of the said treasury and funds thereof on presentation of said warrant the sum of four thousand, four hundred and thirty-seven dollars and ten cents ($4437.10), to bear interest from said date at the rate of six per centum per annum till paid. That afterwards, to-wit, on the day of the date thereof said warrant was duly presented to said treasurer for payment and payment thereof demanded by him, the said Wilson, but that same was not paid. That afterwards, to-wit, on the 5th day of December, 1896, the said T. C. Wilson for a valuable consideration duly assigned by endorsement thereon and delivered said warrant to the plaintiff. That plaintiff is still the legal holder and owner thereof. That no part of same nor any of the interest accrued thereon has ever been paid, but that the said amount thereof and all interests accrued thereon are yet due the plaintiff and remain wholly unpaid.

"That on the 14th day of December, 1897, another of said warrants, numbered 92, on the treasury of said King's Lake Drainage and Levee District, herewith filed marked 'Exhibit B,' was, by the due resolution of the then acting board of commissioners, duly drawn and signed by Frank L. Wilson as president and by W. H. Baskett, secretary of said board, and dated the day aforesaid, wherein and whereby the treasurer of said board was ordered and directed to pay to the said T. C. Wilson or order out of the said treasury and the funds thereof on presentation of said warrant the sum of two hundred and ninety-one dollars and ten cents ($291.10), to bear interest from said date at the rate of six per centum per annum until paid. That afterwards, to-wit, on the day of the date thereof, said warrant was duly presented to said treasurer for

payment and payment thereof demanded by him, the said Wilson, but that same was not paid. That afterwards, to-wit, on the 8th day of January, 1898, the said T. C. Wilson for a valuable consideration assigned by endorsement thereon and delivered said warrant to plaintiff. That plaintiff is still the legal holder and owner thereof. That no part of same nor any of the interest accrued thereon has ever been paid, but that the said amount thereof and interest accrued thereon are yet due the plaintiff and remain wholly unpaid.

"That on the 4th day of February, 1901 another of said warrants, number 189, on the treasury of said King's Lake Drainage and Levee District, herewith filed marked 'Exhibit C,' was, by the due resolution and order of the then acting board of commissioners of said district, being the successors in office of said first named board appointed and qualified as by statute provided, duly drawn and signed by C. C. Eastin as president and T. R. Goodman, secretary of said board and dated the day aforesaid, wherein and whereby the treasurer of said board was ordered and directed to pay to the plaintiff, Henry W. Perkins, or order, out of the said treasury and the funds thereof, on presentaton of said warrant, the sum of two hundred and seventy-nine dollars and seventy-nine cents, ($279.79), to bear interest from said date at the rate of six per centum per annum until paid. That afterwards, on the day of the date thereof, said warrant was duly presented to said treasurer by plaintiff and payment thereof demanded, but that same was not paid. That said warrant was by said board of commissioners and said president and secretary thereof drawn and delivered to plaintiff in lieu and stead of a previous warrant, numbered 155, theretofore by said first mentioned board and officers issued, delivered and made payable to said T. C. Wilson, or order, and which had been by him, the said Wilson, duly transferred by

endorsement and delivered to plaintiff for value; and which said previously drawn warrant, numbered 155, was at the time held and owned by plaintiff and was by·him at·said time duly surrendered to said board and cancelled. That plaintiff is still the legal holder and owner of said warrant number 189. That no part of same nor any of the interest accrued thereon has ever been paid, but that the said amount thereof and interest accrued thereon are yet due the plaintiff and remain wholly unpaid.

"That, on the 16th day of October, 1902, another of said warrants numbered 218, on the treasury of King's Lake Drainage and Levee District, herewith filed and marked 'Exhibit D,' was, by the due resolution and order of said last mentioned board of commissioners, duly drawn and signed by C. C. Eastin as president and by T. R. Goodman, secretary of said board, and dated the day aforesaid, wherein and whereby the treasurer of said board was ordered and directed to pay to the plaintiff, Henry W. Perkins, or order, out of the said treasury and the funds thereof, on presentation of said warrant the sum of six hundred and sixty-four dollars and fifty-seven cents ($664.57), to bear interest from said date at the rate of six per centum per annum until paid. That afterwards, to-wit, on the day of the date thereof, said warrant was duly presented to said treasurer by the plaintiff and payment thereof demanded, but that same was not paid. That the said warrant was by said board of commissioners and said president and secretary thereof drawn and delivered to plaintiff in lieu and stead of a previous warrant, numbered 23, theretofore by said first mentioned board and officers issued, delivered and made payable to said T. C. Wilson, or order, and which had been by him, the said Wilson, duly transferred by endorsement and delivered to plaintiff for value; and which said previously drawn warrant numbered 23 was at the time held and owned

by the plaintiff and was by him at said time duly sur-
rendered to said board and cancelled.    That plain-
tiff is still the legal holder and owner of said warrant
numbered 218.    That no part of same nor any of the
interest accrued thereon has ever been paid, but that
said amount thereof and the interest accrued thereon
are yet due the plaintiff and remain wholly unpaid.

"Plaintiff further states that the said mentioned
twelve miles of levee so constructed by said T. C. Wil-
son was contemplated and provided for in the original
surveys, plats, profiles, plans and estimates made by
the said first named commissioners and approved and
confirmed by the said county court in its order duly
made and entered in said proceedings on May 25,
1895, as aforesaid; and that at the time of entering
into said contract for the construction of said work
by said A. V. Wills & Sons, and at the time of the as-
signment of said contract to said T. C. Wilson, and
at the time of the construction of all said work under
said contract by said Wilson, including said twelve
miles of said levee, and at the time of the drawing and
the delivery to him, said Wilson, of the said several
original warrants upon the treasury of said district
for and on account of said work of construction done,
all as aforesaid, there remained unpaid on the assess-
ments, of benefits made and confirmed by said court
as aforesaid, against the lands within said district, an
amount largely in excess of the sums for which said
warrants were drawn.

"And plaintiff further states that the said twelve
miles of levee was also contemplated and provided for
in the surveys, plats, profiles, plans and estimates so
made by the last appointed commissioners, and so con-
firmed by said county court by its order of date No-
vember 29, 1904, as aforesaid, and that the amount of
the assessments of benefits made by said commission-
ers, and on said date confirmed by the said court, was
adequate and sufficient to pay the amount remaining

due and unpaid for the construction of said twelve miles of levee and evidenced by said warrants and other like warrants, if the whole amount of said assessments had been, as of right and good conscience they should have been, demanded by and paid to said commissioners in cash.

"Plaintiff says that the defendant King's Lake Drainage and Levee District is a continuation of and is one and the same corporate body as the King's Lake Drainage and Levee District under contract with and for which the said Thomas C. Wilson constructed the said twelve miles of said levee and which, by its said first mentioned board of commissioners in consideration thereof, executed to him the said warrants as hereinbefore set out. That by accepting, adopting, appropriating and using the said twelve miles of said levee so constructed as aforesaid, and making same a part of the work necessary to be done in protecting and reclaiming the lands within said district, the defendant is, and in equity and good conscience should be, adjudged to be held to have ratified and confirmed the acts of the said William J. Seaman, William H. Baskett and Frank L. Wilson the first named board of commissioners and their successors in office as aforesaid in constructing same and in the incurring of said indebtedness to said Wilson therefor so evidenced by said warrants now held and owned by plaintiff as aforesaid. And that in equity and good conscience the defendant is and ought to be held and adjudged to be liable to the plaintiff for the amount of said warrants and the interest accrued thereon. And that the defendant and its present corporate authority are, and by reason of the premises ought to be held and adjudged to be, estopped and precluded from denying such liability. That plaintiff is without remedy, recourse or redress on said warrants or for the value of said work for which same were issued, or otherwise, in the premises, against said dis-

trict or the lands embraced and included therein or the owners thereof, except through or against the now legally constituted corporate body thereof, to-wit, the defendant herein. And that by reason of the premsies an action hath accrued to the plaintiff to demand and recover against the defendant the sum of five thousand, six hundred and seventy-two dollars and fifty-six cents ($5672.56), the amount of the principal sum of said warrants numbered 51, 92, 189, and 218, and also lawful interest on the said several sums mentioned in said warrants respectively from their respective dates as aforesaid.

''Wherefore, premises considered, plaintiff prays judgment against the defendant for the said sum of five thousand, six hundred and seventy-two dollars and fifty-six cents ($5672.56), the amount of said indebtedness so evidenced by said warrants with six per cent interest per annum on the respective sums mentioned in said warrants, respectively, from the said dates thereof respectively. And that plaintiff have such other, further and general or special relief in the premises as equity may require and as to the court shall seem meet.''

We find ourselves unable to agree with the presiding judge in the opinion prepared and tendered by him. A majority of the court are of the opinion that the bill states a cause of action.

There can be no doubt that the prior drainage district, with which Wilson contracted and for whom he performed the services in constructing the twelve miles of levee, was a corporation *de facto*. The judgment of the county court erecting that corporation certainly did not reveal it to be void on its face. It finally failed as an entity because of the fact that Seaman's wife owned land situated in the district, as will appear by reference to the decision of the Supreme Court overturning it. [See King's Lake Drainage Dist v. Jamison, 176 Mo. 557, 75 S. W. 679.]

It has been said the judgment of the Supreme Court in that case "cut up the prior drainage and levee district root and branch." [See Wilson v. King's Lake Drainage & Levee Dist., 237 Mo. 39, 139 S. W. 136.] It is no doubt true that the ostensible corporate entity there involved fell to the ground, but it seems the root remained, under the express ruling of the Supreme Court to that effect. By the judgment of the Supreme Court overturning the prior corporation, the right was reserved to the petitioners to proceed and incorporate the same territory and the same inhabitants under the same statutes, and thus become clothed with the same franchises, to the same ends, on the same petition, which afforded the basis for the prior incorporation. Touching this matter, the Supreme Court said, "The judgment of the circuit court must therefore be affirmed, and the cause remanded to the county court of Lincoln county, to be by it taken up and tried as if the original petition was presented to it for the first time, and to proceed with the cause without regard to anything that has heretofore been done in the cause but in conformity herewith and with the statute." [See King's Lake Drainage Dist. v. Jamison, 176 Mo. 557, 579, 75 S. W. 679.] Therefore, though the corporate entity went out of existence and its branches fell, by virtue of the judgment of the Supreme Court, the "root" remained, and it appears from the facts set forth in the bill that the present defendant corporation springs forth from the "root" mentioned—that is, the identical petition upon which the former corporation de facto at least came into existence.

It therefore sufficiently appears from the averments of the bill that the defendant corporation was organized for the same purposes, to serve the same lands and the same inhabitants, under the same statutes, as the prior one. This being true, the franchises thus gathered together for utilization through the

corporate entity are to be regarded as the same and identical franchises theretofore involved, and such alone is the substance of corporate existence. [See Winkelman v. Levee Dist., 171 Mo. App. 49, 153 S. W. 539.] The present defendant, or new corporation, should therefore be regarded as a continuation of the prior or old one to which the services were rendered in constructing the twelve miles of levee described in the bill. From other averments of the bill, it appears that the present defendant took over the levee constructed by its predecessor as *a part of the levee* which it was organized to construct. The averments of the bill are pointed and direct to the effect that the old levee was incorporated into and forms a part of the new one built by defendant. The demurrer admits the fact so alleged to be true, and it is obvious therefrom that the new corporation received the benefits of Wilson's labor in constructing the levee for the prior company. In such circumstances, the obligation to compensate for the benefits thus received is cast upon defendant, even though the original corporation was one *de facto* only.

Both the prior drainage district and the present defendant were municipal corporations under our law as is well settled by the Supreme Court decisions. [See Wilson v. Drainage Dist., 237 Mo. 39, 139 S. W. 136; see also Winkelman v. Levee Dist., 171 Mo. App. 49, 153 S. W. 539; Morrison v. Morey, 146 Mo. 543, 560, 561, 48 S. W. 629.] It is certainly the established rule of decision that municipal corporations do not extinguish their debts by merely changing their names or reorganizing under new charters, and especially is this true in those cases where a new corporation succeeds an old one to conserve the same purposes for the same inhabitants and pertaining to the same territory through utilizing franchises to the same end as its predecessor. [See Hill v. City of Kahoka, 35 Fed. 32.] Touching this question, Judge Dillon says, in his

splendid work on Municipal Corporations (4 Ed., sec.
170; see, also, 5 Ed., sec. 336): "An absolute repeal
of a municipal charter is therefore effectual so far
as it abolishes the old corporate organization; but
where the same or substantially the same inhabitants
are erected into a new corporation, whether with ex-
tended or restricted territorial limits, such new cor-
poration is treated in law as the successor of the old,
entitled to its property rights and subject to its lia-
bilities." [See, also, sections 171, 172, 173, Dillon,
Municipal Corporations (4 Ed.), or sections 337, 338,
339 (5 Ed.) and numerous cases in notes.]

On the same question the Supreme Court of the
United States says, in Broughton v. Pensacola, 93 U.
S. 266, 270: "When, therefore, a new form is given
to an old municipal corporation, or such a corpora-
tion is reorganized under a new charter, taking in its
new organization the place of the old one, embracing
substantially the same corporators and the same ter-
ritory, it will be presumed that the Legislature in-
tended a continued existence of the same corporation,
although different powers are possessed under the
new charter, and different officers administer its af-
fairs; and in the absence of express provision for their
payment otherwise, it will also be presumed in such
case that the Legislature intended that the liabilities
as well as the rights of property of the corporation in
its old form should accompany the corporation in its
reorganization." [See, also, Mobile v. Watson, 116
U. S. 289; Dillon, Municipal Corporations, supra; Amy
& Co. v. Selma, 77 Ala. 103. For the general prin-
ciple, see, also, Thompson v. Abbott, 61 Mo. 176;
Hughes v. School Dist., 72 Mo. 643.]

The facts set forth in the bill sufficiently reveal
that the present defendant is merely a continuation
of the former corporation, as we understand the rule
with respect to such matters. There can be no doubt
that both corporations were erected under the statute

for the purpose of building levees and ditches to conserve the land and the interests of the inhabitants interested in the territory defined. Indeed, the bill expressly sets forth that the new corporation, the present defendant, appropriated the twelve miles of levee theretofore built under the auspices of the former *de facto* corporation into the levee which it was organized to build. Furthermore, that the commissioners serving the present defendant reported that such levee was then standing and the corporation adopted their re-report and ran an assessment upon the lands to compensate for such old levee so appropriated as a parcel of the new one then about to be built. After such assessment was so run upon the lands, the bill avers it was in part remitted and credited to the landowners themselves. Thus they were relieved from the payment therefor, though the benefits were expressly accepted by the inhabitants of the district. This being true, it would seem that the plaintiff's equities are abundant and that the cause loudly calls for the consideration of a court of equity. It is obvious where it appears, as here, the inhabitants owning land in the district included within the present incorporation have received all of the benefits of Wilson's labor, that they should compensate therefor rather than permit him to lose the reasonable value of his performance. It is to be observed the suit does not proceed on the warrants set forth in the bill, but rather declares on the implied promise to compensate the reasonable value of the benefits received. This course is obviously a proper one, for, though the warrants are invalid, the obligation to compensate for the work still subsists. [Louisiana v. Wood, 102 U. S. 294.]

Moreover, though the prior drainage district were not a corporation either *de jure* or *de facto,* it would seem that defendant should pay for the benefits thus received, which inured to the lands and inhabitants its charter was issued to conserve. No one can doubt

that defendant, as an incorporated drainage and levee district under our statute, possesses the power to construct a levee, and it would seem that, if it utilized a portion of an old one in the construction of the new, such would be moving along the lines of the very power conferred. The statutes constituting the charter of defendant and affording it power to act in that behalf are comprehensive, indeed, with respect to the matter of conferring powers in and about the performance of the duties which the charter casts upon it. Moreover, the Legislature has seen fit to incorporate as one of the sections of the statute concerning such levee districts, the positive command to liberally construe the charter provisions in aid of the end sought to be attained by the corporation. The statute referred to is as follows:

"The provisions of this article shall be liberally construed to promote the drainage and reclamation of wet and overflowed lands within this State, the building of necessary embankments or levees, and the preservation of any system of drainage heretofore constructed under any law of this State." [Sec. 5573, R. S. 1909.]

Furthermore, our Supreme Court has but recently declared that "Laws relating to drainage and protection of overflow land should not receive the same narrow and restricted construction that courts give to laws governing the assessment and collection of the revenue." [See State ex rel. McWilliams v. Bates, 235 Mo. 262, 138 S. W. 482.] When the charter powers of defendant are thus considered with a liberal view to effectuate the end designed, it appears to be clear enough that defendant acted within the power conferred upon it when it incorporated the twelve miles of levee, theretofore constructed under the auspices of its predecessor, into the new levee constructed by it. Therefore, though it be true that the mere matters of detail pertaining to employing the old levee were not

complied with in every respect, defendant is estopped
from denying the validity of plaintiff's claim, if it
acted within the power conferred upon it in incor-
porating the old levee into the new. While an estoppel
may not be invoked against a municipal corporation,
which acts entirely beyond the scope of the power con-
ferred upon it, this doctrine does not obtain as to
such matters as fall within the powers conferred.
Where a municipal corporation enters into a contract
or becomes obligated to another by operation of law,
within the powers conferred upon it thereabout, the
doctrine of estoppel obtains against it with the same
force and effect as against individuals. The point
has been expressly decided by the Supreme Court in
numerous cases, but for the present see Union Depot
Co. v. St. Louis, 76 Mo. 393. [See, also, s. c., 8 Mo.
App. 412; Edwards v. City of Kirkwood, 147 Mo. App.
599, 127 S. W. 378.] For an application of the same
doctrine in the case of a county which had contracted
within its powers but had defectively executed the
power conferred, see Simpson v. Stoddard County,
173 Mo. 421, 463, 464, 465, 466, 73 S. W. 700. For a
general review of the doctrine touching private cor-
porations, see Bank v. Lyons, 220 Mo. 538, 119 S. W.
540. It seems entirely clear that defendant, having
acted within its power in using the old levee and in-
corporating it into a new one, is estopped from deny-
ing reasonable compensation for the value of the serv-
ices rendered by those constructing it and who have
not been compensated.

From a careful reading of the bill, we find no facts
averred therein to the effect that a portion of the ac-
count for services in constructing the levee other and
distinct from that declared upon here, is outstanding
in the hands of other parties. There is nothing in the
bill that we have been able to discover which reveals
a splitting of demands or that the plaintiff here sues

for only a portion of the amount due for building the levee. Though it be true that the warrants here described in the bill and others were issued, it may be true as well, for aught that appears, that all of that indebtedness has been paid save that now sued for. This being true, of course, the question of splitting of demands is not in the case.

Neither do we see anything in the bill to the effect that Wilson performed all of the labor in building the levee while the appeal in the case of King's Lake Drainage Dist. v. Jamison, 176 Mo. 557, 75 S. W. 679, was pending in the Supreme Court and therefore precluded his right in equity. Indeed, it appears the warrants described in the bill were issued at different times from 1896 until the 16th day of October, 1902, but the case was not decided in the Supreme Court until July 2, 1903. It may be, for aught that appears in the bill, that the work was all performed before the appeal was perfected. But we regard this as wholly immaterial in any view of the case, for Wilson was not a party to the suit, but, on the contrary, was a third party under contract with the corporate entity, which appeared, on the face of the judgment of the county court creating it, to be a valid and subsisting corporation possessing full authority to employ him to construct the levee. Obviously the prior drainage district with which he contracted was a corporation de facto at the time and he was authorized to deal with it as such. [Hill v. Kahoka, 35 Fed. 32.] By continuing to execute the contract to which he had become obligated before the appeal was perfected, he forfeited no rights and certainly should not be condemned as without equity. Other points made are overruled.

The judgment should, therefore, be reversed and the cause remanded.

The presiding judge deems the conclusion here reached to be in conflict with the decision of the Su-

preme Court in Johnson v. School District, 67 Mo. 319 and Seaman v. Levee District, 219 Mo. 1, 117 S. W. 1084 and, therefore, requests the cause be certified to the Supreme Court for final determination. It is so ordered. *Allen, J.,* concurs. *Reynolds, P. J.,* dissents.

## DISSENTING OPINION.

REYNOLDS, P. J.—This is a suit to enforce payment for work done upon a levee by one Wilson, as assignee of the original contractor, appellant's claim evidenced by warrants issued for part of the work by a body purporting to be the board of commissioners of King's Lake Drainage & Levee District of Pike and Lincoln counties. The warrants were issued in favor of Wilson and were afterwards assigned to one Perkins. After the institution of this suit, Perkins, the holder of the warrants, died and his administrator, having qualified, was duly substituted as plaintiff. A demurrer was interposed to the petition, the demurrer sustained and plaintiff perfected his appeal to the Supreme Court, that court then having jurisdiction, the amount involved exceeding $5000. Pending the submission and determination of the case there, the limit of jurisdiction of the Supreme Court was changed so as to cover, where the amount alone conferred jurisdiction, those cases only in which the amount involved exceeded $7500. Holding that the amount here involved, including interest up to the time of the rendition of the judgment in the circuit court, did not exceed $7500, and that no question within its jurisdiction was involved, the Supreme Court transferred the cause to this court. To determine the question of the amount involved and also that of jurisdiction by reason of the character of the party defendant, a levee and drainage district, the Supreme Court found it necessary to examine and pass upon the peti-

tion. To that end Judge GRAVES, who wrote the opinion of the court, summarized it so fully that it is unnecessary to reproduce it here. For the substantial averments of the petition and the conclusions reached by the Supreme Court on the questions involved, see Wilson, Admr., v. King's Lake Drainage & Levee District, 237 Mo. 39, 139 S. W. 136, hereafter referred to as the Wilson case.

The cause was argued and submitted here October 12, 1912, and the judgment of the circuit court affirmed February 4, 1913, all the members of our court concurring. A motion for rehearing was filed in due time, sustained, and the cause set down for reargument, the judgment of affirmance theretofore rendered being set aside. It was reargued and again taken under submission May 20th.

While counsel filed supplemental briefs, the assignments of error are as before. These are to the action of the trial court in sustaining defendant's demurrer to the amended petition and in overruling plaintiff's motion in arrest of judgment and rendering judgment on the demurrer in favor of the defendant below, respondent here. The demurrer was general, attacking the petition as failing to state a cause of action, as also special, in that the petition showed upon its face that plaintiff's right of action is barred by the five-year Statute of Limitations.

Learned counsel for appellant advance the proposition that the defendant corporation had a valid de facto existence at the time of incurring the obligation sued on and cannot now escape liability thereon. Those counsel cite many authorities to the effect that a de facto corporation is an association assuming to be, and acting as, a corporation, under color of authority so to do, but without legal right; that if there is a law authorizing a corporation, and a company has attempted to organize under it and has acted as a corporation, it is a de facto corporation and its de jure

existence can be questioned only by the State. These propositions, particularly that corporate existence can only be questioned by a direct proceeding by the State, are answered in King's Lake Drainage & Levee District v. Jamison, 176 Mo. 557, 75 S. W. 679 (hereafter referred to as the Jamison case), where the validity of the old or first corporation was attacked and it is held that what is now called a *de facto* corporation was no corporation. That is "the law of this case." [Wilson case, supra, p. 45.]

Furthermore, this defendant is not the corporaton which incurred the obligation or issued the warrants. The averment in the petition, that this defendant has adopted the seal of the defunct organization, is, in itself, of no significance one way or the other.

It is further argued that, passing the question of the actual identity of the defendant corporation, while acting under and through its lastly appointed commissioners, with the *de facto* corporate body executing the obligations in suit, acting through the commissioners first appointed, and treating them for the present as distinct and separate bodies, they would still remain a legal identity by succession, and, it is argued, the application of familiar principles of the law to such a situation would render defendant equally liable. Authorities and cases are cited to the effect that where one corporation goes entirely out of existence by being annexed to or merged in another corporation, if no arrangements are made respecting the property and liabilities of the corporation that has ceased to exist, the subsisting, succeeding corporation will be entitled to all the property and be answerable for all the liabilities of its predecessor.

The trouble with the application of this rule, invoked by counsel and accepted by my learned associates, to the case at bar, in the first place, is that the body which contracted for the construction of this

levee and which issued the warrants now before us, was held by our Supreme Court in the Jamison case, supra, not to be a body corporate; held never to have had any legal existence. Construing the effect of the judgment rendered in the Jamison case, Judge GRAVES has said in this present case when before the Supreme Court, at page 45, 237 Mo., supra, "The old proceeding was torn up, root and branch, by the judgment of this court, in the case mentioned, and such opinion becomes the law of this case, whether right or wrong." I cannot understand how, in the light of this express ruling, the "root" still remained and had in it sufficient vitality to bring forth fruit; that is, to allow the void contracts of the defunct body to become valid obligations of the new body.

The next difficulty with the argument of counsel is this: The organization that issued these warrants, never having been a legally organized body of any kind, has and could have no successor. The order of the Supreme Court in the Jamison case—see page 579, 176 Mo.—to the county court was to take up and try the matter of the establishment of the district, "as if the original petition was presented to it for the first time, and to proceed with the cause without regard to anything that has heretofore been done in the cause, but in conformity herewith and with the statute." That wiped out the corporation as well as the first board of commissioners as completely as if never in existence; held, they never had any legal existence. It follows that the board and its corporation could have no corporate successor. The present corporation, defendant here, is an entirely new organization, succeeding no other corporation in rights or interest, property or obligations. We are not even advised by the petition that the boundaries of the present district are colimitaneous with those of the former one which was attempted. In point of fact, it is averred that when the county court, in November,

1904, took up the report of the commissioners describing the district, it approved and confirmed it "as modified." How modified is not pleaded; whether as described in the petition, or in the report, is nowhere averred. The petition pleads and refers us to the Jamison decision. There it appears that the Supreme Court criticised the former order in that it excluded what are called the Ashbaugh lands. Whether this was remedied in the new order we are not advised. In brief, we are not advised by the petition that the boundaries are as in the first order. This defendant is not, does not remain "a legal identity" of the putative one "by succession." As said by the Supreme Court in the Wilson case, following immediately after that which we have before quoted, and still referring to the judgment in the Jamison case, supra, that decision nullified every step subsequent to the filing of the petition for the creation of the district. But I do not think that these matters are of vital importance here—in a way they are incidental.

After holding that the present action is not on the warrants, Judge GRAVES concludes in the Wilson case, supra (l. c. 45): "What rights plaintiff may have are such as have accrued since the organization of defendant." That presents the real question here involved, namely, whether defendant has done any acts since its organization as a lawful corporation that make it liable to the plaintiff—rights which this plaintiff can enforce in this proceeding; whether this defendant is estopped by the fact of user of the twelve miles of levee constructed by Wilson under his assignor's contract with the first board.

The estoppel, as pleaded, is: "That by accepting, adopting, appropriating and using the said twelve miles of said levee so constructed as aforesaid, and making same a part of the work necessary to be done in protecting and reclaiming the lands within said district, the defendant is, and in equity and good con-

science, should be adjudged to be held to have rati-
fied and confirmed the acts of the said William J.
Seaman, William H. Baskett and Frank L. Wilson, the
first named board of commissioners and their succes-
sors in office as aforesaid, in constructing same and in
the incurring of said indebtedness to said Wilson
therefor so evidenced by said warrants now held and
owned by plaintiff as aforesaid. And that in equity
and good conscience the defendant is and ought to be
held and adjudged to be liable to the plaintiff for the
amount of said warrants and the interest accrued
thereon. And that the defendant and its present cor-
porate authority are, and by reason of the premises
ought to be held and adjudged to be, estopped and
precluded from denying such liability.''

It is not very clear what is meant by the phrase
in the prayer, "and its present corporate authority."
But so it is written. Possibly it means, "and its com-
missioners." We will treat it as meaning that.

Proceedings for the organization of the drainage
and levee district here involved were commenced, as
before stated, by filing a petition having that object,
in the county court of Lincoln county, a short time
prior to August, 1894. Consequently they are to be
tested, in so far as concerns the organization of the
district and the powers and authority of its commis-
sioners and the laying off of the district, by the provi-
sions of the Act approved April 1, 1893 (Laws 1893,
p. 188). This act became article 5, chapter 122, Re-
vised Statutes 1899, and is now article 3, chapter 41,
Revised Statutes 1909. In so far as the matter before
us is concerned, the provisions of the Act of 1893 are
carried into the revision of 1909, without change, and
for convenience we shall refer to the sections of that
revision.

The first section of the article is section 5547,
which section authorizes the creation of drainage and
levee districts in the manner in the article thereinafter

provided. The next section (5548) provides that when a majority of the owners of lands within the district proposed to be organized, desire to construct drains, levees or other work across the lands of others for agricultural, sanitary or mining purposes, ''or to maintain and keep in repair any such drain or drains . . . or levees heretofore constructed under any law of this State,'' such owners may file in the office of the clerk of the county court of the county in which the greater part of the land to be affected shall lie, a petition signed by a majority of the owners of the lands within the district proposed to be organized, setting forth the proposed name of the district, the necessity for it and a description of the starting points, route and terminus and a general description of the lands proposed to be affected, with the names of the owners when known, ''and if the purpose of said owners is the repair and maintenance of a ditch or ditches, levee or levees or other work heretofore constructed under any law of this State, said petition shall give a general description of the same, with such particulars as may be deemed important,'' and may apply for the organization of the district, by the name and with the boundaries proposed, ''and for the appointment of commissioners for the execution of such proposed work according to the provisions of this article.''

Section 5549 provides for notice of the application and what the notice shall contain.

Section 5550 provides that the county court in which the petition has been filed may hear the matters covered by the petition at any time and at either a general or special term of the court.

Section 5551 provides that on the hearing of the petition the parties through or upon whose lands any of the proposed work may be constructed, or whose lands may be damaged or benefited thereby, may appear and contest the necessity or utility of the pro-

posed work, or any part thereof, and either party may offer any competent evidence in regard thereto. The court is thereupon to proceed to ascertain whether the parties signing the petition or remonstrance are competent under the statute; if not the petition is to be dismissed; but if it appears that it has been signed in conformity with the law, and it shall further appear to the court that the proposed drain or drains, etc., "is or are necessary or will be useful for the drainage of the lands proposed to be drained thereby, for agricultural, sanitary or mining purposes, the court shall so find, and shall appoint three competent persons as commissioners to lay out and construct such proposed work," but if the court finds against the petitioners, the petition shall be dismissed at the cost of the petitioners.

It was for the failure of the court to appoint "three competent" commissioners that all proceedings of the court in the matter following the filing of the petition were held, in the Jamison case, supra, to be invalid, or, as Judge GRAVES has said in the Wilson case, supra, were "torn up, root and branch."

The next section of any moment here necessary to cite, is section 5555, which provides that as soon as may be after their appointment, or within such time as the court may direct, the commissioners shall examine the land described in the petition proposed to be drained and protected, and the lands over or upon which the work is proposed to be constructed, and shall determine the starting point, probable cost of the proposed work, including all incidental expense, and the cost of the proceeding therefor, the probable cost of keeping the same in repair after the work is completed, what lands will be injured thereby, the aggregate amount of such injuries; and award to each tract, etc., the amount of damages so determined by them, what lands will be benefited by the construction of the proposed work, whether the benefits will equal or ex-

ceed the aggregate cost of constructing the work, including all incidental expenses, costs of proceeding and damages, and they shall apportion and assess the estimated cost on the lands so benefited. They are also to report whether the proposed district, as set out in the petition filed, will embrace all the lands that may be damaged or benefited by the proposed work, and if not, to report what additional lands will be benefited or damaged, and the amounts of benefits or damages, in the same manner as though such lands were included in the original petition. It is further provided in the sixth subdivision of this section 5555 that, "In case the prayer of the petition is for the purpose of repairing and maintaining a levee or levees, ditch or ditches, or other work heretofore constructed under any law of this State, it shall be the duty of the commissioners to examine the said levee or levees, ditch or ditches, or other work, and the lands intended to be reclaimed thereby, and to report to the court: First, whether, in their opinion, said levee or levees, ditch or ditches, with proper repairs, can be made sufficient to protect permanently said lands from overflow from high water, or to drain the same. Second, the probable annual expense of keeping the same in repair. Third, what lands will be benefited thereby, giving accurate descriptions, . . . and, if any repairs are needed, the cost of the same, with all incidental expenses, and an assessment of such cost on each tract. . . . Fourth, whether the aggregate amount of such costs will exceed the benefits resulting to the lands and interests assessed. Fifth, whether the proposed district will embrace all of the lands that may be benefited by the maintenance of such levee or ditch, and if not, to report what additional lands will be so affected; which report shall be filed with the clerk of the court." These subdivisions of the sixth subdivision, it will be observed, relate exclusively to proceedings in those cases in which the prayer of the

petition is for the purpose of repairing and maintaining a levee or ditches theretofore constructed. "under any law of this State."

Section 5556 provides: "If the commissioners shall find that such costs, expenses and damages are more than equal to the benefits that will be bestowed upon the lands to be benefited, they shall so report, and the proceedings shall be dismissed at the cost of the petitioners;" while in the next section it is provided that if the commissioners report that the whole cost of the proposed work will be less than the benefits, etc., they shall proceed to have the proper surveys, profiles, plans and specifications made and shall report to the court their conclusions thereon, with a copy of the surveys, profiles, plans and specifications, and their recommendations as to the best and cheapest method of doing the proposed work.

Section 5558 provides that the commissioners shall not be confined to the point of commencement, route or termini of the drains or ditches, or the number, extent or size of the same, or the location, plan or extent of any levee, ditch, or other work to that proposed by the petitioners, but shall locate, design, lay out and plan the same in such manner as shall seem to them best designed to drain or protect the lands of the parties interested, with the least damage and greatest benefit to all lands to be affected thereby, the power being lodged in the county court, on the application of any person interested, at the hearing thereafter provided for, or on application of the commissioners, to alter the proposed route by a written order in such manner as shall appear to the court to be just. If the commissioners find that the proposed district, as described in the petition filed, will not embrace all of the lands that will be benefited by the proposed work, or that it will include lands that will not be benefited and not necessary to be included in the district for any purpose, they may extend or contract the bounda-

ries of the proposed district so as to include or ex-
clude all such lands, as the case may be, and this pro-
posed boundary, at the hearing provided for, may be
altered by the court in such manner as shall appear to
it to be just, provided the alteration of boundaries
shall not have the effect of so far enlarging or con-
tracting the proposed district as to render the petition
void or dismissible under the requirements of this
article.

It will be observed that so far these provisions
relate to what may be called the preliminary steps in
the matter. All are taken subject to final action to be
had after the landowners have had their "day in
court." When the necessity of the creation of the dis-
trict and its boundaries and its cost have been ascer-
tained and commissioners have been appointed and
they have filed their report, section 5559 provides that
upon the filing of that report, the court shall enter
an order, fixing the time and place when and where
the parties interested may appear and contest the con-
firmation of the report, due notice to be given of this
hearing.

Section 5560 which follows, is the one under which
the landowners are first heard in court on the whole
matter. That section provides that any owner of lands
affected may appear on the day named and remon-
strate against the whole or any part of the proposed
work. The court shall thereupon fix a time and place
for hearing the objections and may frame an issue
of fact and impanel a jury and take the verdict of the
jury upon the trial of such issue, "whether the amount
of damages awarded by the commissioners is adequate,
and whether the assessments of benefits as made by
the report to any remonstrant commanding the review
by a jury is too high, and the jury may then assess
the same." All other issues arising on remonstrance
are to be tried by the court. If the court finds from
a hearing that the report requires modification, it

may be referred to the commissioners, who may be required to modify the report in any respect. If the finding of the court is in favor of the validity of the proceedings, ''the court, after the report shall have been modified to conform to the findings, or, if there is no remonstrance, the court shall confirm the same, and the order of confirmation shall be final and conclusive, and the proposed work be established and authorized and the proposed assessments approved, subject to the right of appeal to the Supreme Court, as in other actions.'' This clause as to the right of appeal was construed in the Jamison case as providing for appeals from the county to the circuit court and thence to the Supreme Court and was held to cover all steps before then taken in the matter. All these being done and no appeal taken, section 5560 then further provides: ''And, upon the entering of such order of confirmation of record, said district is hereby declared by law to be organized as a drainage district by the name mentioned in said petition, and with the boundaries fixed by the order confirming the report of said commissioners. And said district is hereby declared to be a body corporate by the name mentioned in said petition as aforesaid, with the right to sue and be sued, to adopt and use a corporate seal, and to have perpetual succession; and the commissioners appointed as aforesaid and their successors in office shall, from the entry of such order of confirmation, constitute the corporate authorities of such drainage district, and shall exercise the functions conferred upon them by law, and do all things and perform all acts necessary to the construction and preservation of the proposed work; and all proceedings had prior to the entry of such order of confirmation shall be deemed and are hereby declared to be necessary to the formation of said body corporate.''

With this done, the organization of the district is completed. It will be noticed that in all of the

steps so far taken, the landowners have had their "day in court."

Sections 5561, 5562 and 5563 provide for the manner in which benefits are to be paid.

Section 5564 relates to the powers of the commissioners. As it is a vital one in the case at bar, we quote it verbatim.

"The commissioners, when qualified in pursuance of this article, may do any and all acts that may be necessary in and about the surveying, laying out, constructing, repairing, altering, enlarging, cleaning, protecting and maintaining any drain, ditch, levee or other work for which they shall have been appointed, including all necessary bridges, crossings, embankments, protections, dams and lateral drains, clearing out and removing of obstructions from natural or artificial channels or streams within or beyond the limits of the drainage district, procuring, purchasing or condemning, under proceedings similar to the proceedings had on the award of damages hereunder, riparian rights, rights of flowage and water powers, and may use any moneys in their hands arising from assessments for that purpose."

Following sections provide how the contract is to be let:

Section 5566 provides for making additional assessments. We will refer to it hereafter.

Section 5567 gives the commissioners power to borrow money. It is not material to the question before us.

The Acts of 1909 added three new sections, but having been enacted after the beginning of these proceedings, they do not affect them nor are they material to any of the matters here involved. We may add that by Act approved April 12, 1911 (Laws 1911, p. 225), the General Assembly repealed sections 5548, 5560, 5565, 5567 and 5572, and enacted new sections in lieu thereof, and also added two new sections. The

changes thus made, however, do not affect the question here involved, in fact these new sections make no material change, so far as concerns the point here in decision, so that what we here decide is as applicable to this article three since these amendments were made as before then. We have set out the provisions of this article of our statute as concisely as possible, that we might not only have clearly before us the character of this corporation and the powers of the commissioners, but also to demonstrate how closely it parallels the Illinois Act of 1879, to which reference will hereafter be made.

In a way, barring what is said by our Supreme Court in the Jamison and Wilson cases, supra, the precise question as to the power of the commissioners, is one of first impression in our courts. But we are not without judicial light to guide us in determining the powers of these commissioners under this article of our law. This law of ours, enacted in 1893, is practically a copy of the law of the State of Illinois relating to the same matter; that is, the construction of drains and levees, the creation of levee districts and the powers of the commissioners. The Illinois law was adopted in 1879. [See Session Acts Illinois 1878-79, p. 120.] On the well-known rule that when one State adopts the laws of another, and that law, prior to adoption in the adopting State has been construed by the courts of the State of its origin, the interpretation placed upon it by the highest court of the State of its origin is almost without exception recognized and accepted in determining the meaning and construction to be placed upon the law by the courts of the adopting State.

The case in which the Supreme Court of Illinois construed its law of 1878, is that of Badger et al. v. Inlet Drainage District, 141 Ill. 540. There the particular part of the law under consideration was that

which relates to the power and authority of the com-
missioners appointed and of the district created and
organized under that law.     The drainage district
against which that action was brought was organized
under the above law.    Assessments of damages and·
benefits were made and confirmed, and afterwards the
commissioners of the district made an agreement with
a firm whereby the latter were to remove a dam the
firm had built and which it maintained across a creek
within the boundaries of the district, the firm also to
remove the masonry, stone abutments and flume in
connection with the dam.   In consideration thereof the
commissioners agreed to pay the firm $1700 and to
levy an assessment upon the lands in the drainage
district to make the payment.   The dam and masonry,
etc., were removed by the firm and under the agree-
ment the commissioners delivered to the firm seventeen
orders of $100 each, drawn by the commissioners on
the treasurer of the district.   The commissioners then
made an assessment on the lands of the district for
$1700 to pay the warrants drawn for removing the
dam, etc.   The collection of this assessment was en-
joined at the instance of one of the landowners with-
in the district and no other assessment was thereafter
attempted to be levied upon the lands of the district
for that purpose.   The holders of the warrants then
presented them to the treasurer of the district and
demanded payment, which was refused because there
was no money in his hands belonging to the district.
Suit was then brought upon the orders or warrants
against the drainage district.   The cause was tried in
the lower court without the intervention of a jury and
judgment rendered by the court in favor of the de-
fendant.   From this an appeal was duly prosecuted to
the Supreme Court.   The opinion in the case was de-
livered by Mr. Justice SCHOLFIELD.   It covers so many
of the aspects of the case before us that we venture

176 Mo. App. 33

to quote from it at considerable length. That Justice says (l. c. 545):

"Although we have held that a drainage district is to be classed as a municipal corporation . . . yet we have also held that such a district is organized merely for a special and limited purpose; that its powers are restricted to such as the Legislature has deemed essential for the accomplishment of such purpose, and that it is only authorized to raise funds for the specific object for which it is formed, and that it can do that in no other mode than by special assessments upon the property benefited, which can in no case exceed the benefits to the lands assessed. [Elmore v. Drainage Commissioners, 135 Ill. 277.] So, also, we have held, where the statute prescribed a mode and purpose of municipal taxation, it must be pursued. No other mode or purpose can be substituted by those who exercise the power. [Webster v. The People, 98 Ill. 343.]" Mr. Justice SCHOLFIELD then quotes various sections of the act under which appellee was organized which, on comparison, will appear to be practically identical with our own law.

Continuing, Mr. Justice SCHOLFIELD takes up the consideration of section 28 of the Illinois law, which section provides: "Upon the organization of said drainage district the commissioners so appointed, shall from thenceforth, have power to contract and be contracted with, sue and be sued, plead and be impleaded, and to do and perform, in the corporate name of said district, all such acts and things as may be necessary for the accomplishment of the purposes of this act." This provision is to all intents and purposes a part of section 5560 of our statute which we have before summarized.

After quoting it as above, Mr. Justice SCHOLFIELD says: "But this is to be construed in connection with the preceding sections, so as to give effect to each, and when this is done, it will be seen that it not a mod-

ification of the preceding restrictions upon the power to contract, but simply a grant of power to contract in subordination thereto.''

The preceding sections of the Illinois law are similar to sections of our own law which we have noted from section 5547 to section 5561.

Continuing, Mr. Justice SCHOLFIELD says: "It is also provided in section 36, that 'the commissioners, when qualified in pursuance of this act, may do any and all acts that may be necessary in and about the surveying, laying out, constructing, repairing, altering, enlarging, cleaning, protecting and maintaining any drain, ditch, levee or other work for which they shall have been appointed, including all necessary bridges, crossings, embankments, protections, dams and side drains, clearing out and removing of obstructions from natural or artificial channels or streams within or beyond the limits of the drainage district, procuring or purchasing riparian rights and water powers by agreement with the owners thereof, and may use any money in their hands arising from assessments for that purpose.' "

Comparison of this section so far quoted with our section 5564 shows that the two sections are practically identical in language, completely identical in effect. Commenting upon the quoted clause of this section, Mr. Justice SCHOLFIELD says (l. c. 547):

"But since all this may be done under the general power to contract, it cannot be held as an enlargement of the powers granted by section 28 (our section 5560), and must therefore be held to be an additional limitation or restriction on those powers, and the meaning would therefore have been precisely the same, and more obvious, if the phraseology had been that the commissioners 'may use any money in their hands arising from assessments,' for these purposes, repeating them after instead of before this language. It is still further manifest that this section is but an addi-

tional limitation or restriction, and not an enlargement, of the powers intended to be conferred by section 28, by the *provisos* which follow the language quoted, requiring public lettings in certain cases to the lowest bidder, prohibiting the commissioners from being interested in the contracts, and protecting watercourses, etc., from injury by the improvement. Power is given the commissioners in section 38 to borrow money, but it is expressly limited to not exceed the amount of assessment unpaid at the time of the borrowing and its payment is secured only by making it a lien upon the assessment; and by section 39, 'all damages over and above the benefits to any tract of land shall be payable out of the amounts assessed against other lands for benefits.'" This done by our section 5567.

As before noted, section 36 corresponds to our section 5564. This provision of section 39 of the Illinois act is practically covered by section 5556 of our law, which provides that if the expenses and damages are more than equal to the benefits to be bestowed upon the lands to be benefited, the commissioners shall so report and the proceedings shall thereupon be dismissed at the cost of the commissioners, and by our section 5568, which provides that the damages allowed shall be first paid or tendered to the owner before the commissioners shall be authorized to enter upon the land for the construction of any work proposed thereon. This inhibition is repeated practically in section 5569.

Continuing, Mr. Justice SCHOLFIELD says (l. c. 548): "It results that, in our opinion, when this drainage district was first organized there was no power in the commissioners to contract for the removal of the dam, etc., of the appellants, and that before the commissioners could make any contract in that respect they must present to the court appointing them a report recommending the enlargement of the

Wilson v. Drainage District.

improvement for .which they were previously appointed, accompanied by plans, profiles and an estimate of costs, including the removal of the dam, etc., and afford to the landowners of the district an opportunity to be heard upon the question of confirming such report.''

Concluding his opinion, Mr. Justice SCHOLFIELD (l. c. 549) says: ''There was evidence showing that the commissioners had availed of the removal of the dam, etc., and it is contended this estops them to deny the validity of the contract for its removal, and East St. Louis v. East St. Louis Gaslight and Coke Co., 98 Ill. 415, is relied on in support of that contention. It was held in that case, that where the contract of a municipal corporation has no element of illegality, the objection made to it only alleging a defect of power in respect to the terms of its duration, the doctrine that where a corporation has received benefits under a contract which is merely *ultra vires* it shall pay for those benefits, should apply to the municipal corporation with equal force as in any case of a private corporation. *But in such cases there is power to do the particular thing, only it is not authorized to be done in the way it is done.* (The italics are ours.) The doing of the thing in a proper way is a legitimate charge upon the revenues of the municipality, and so when it is done, and is accepted and enjoyed by the municipality, the municipality gets what it had authority to get in a different way, and it should therefore pay for it what it would have had to pay had it got it in the right way. In the present case, however, if we are right in the views we have expressed, there was no power in the commissioners to do the particular thing—namely, remove the dam, abutments, etc.— *for the reason that the powers of the commissioners are limited to the work described in their report and accompanying plans and profiles, etc., and that work is not within the description therein.* (Italics ours.)

Moreover, to entitle appellants to a judgment, it must appear that they have a legal claim, not merely as against the commissioners, but as against the real estate within the district benefited by the improvement, for if judgment be rendered it can only be satisfied by a special assessment upon that property. It cannot, therefore, be conclusive as to the right of appellants to recover, merely to show that the commissioners, as individuals, have done or said that which admits the right of appellants, for they cannot, by their acts and conduct, enlarge their powers over the property within the district without the knowledge and consent, express or implied, of the owners of that property. [Shaeffer et al. v. Bonham et al., 95 Ill. 368; Bigelow on Estoppel (5 Ed.), 466, 467, and authorities cited in notes 1 and 2.] And therefore, although the property owners of the district are not parties to the suit, yet, because there can be no judgment unless it can be enforced against their property, it must follow that unless they are estopped to deny appellants' right, the commissioners cannot, in suits like the present, be estopped to do so. The evidence in the record is insufficient to prove an estoppel as to the owners of real estate within the district benefited by the improvement, and, indeed, there does not seem to have been any effort upon the trial to make such proof.''

As before observed, we have not overlooked the fact that that was an action at law and that this is a suit in equity, but in so far as concerns the powers of the commissioners, and the scope of the corporate powers, we think that this decision in the Badger case is applicable to our own law.

We think that our law carries evidence on its face that the General Assembly, in enacting it, has been exceedingly careful to expressly place limitations upon the powers of the commissioners, and for that matter upon those of the corporation itself and to leave nothing to implication. While the section expressly

conferring power (section 5564), which we have quoted in full, follows the sections defining the duties of the commissioners, beyond all question, as said in the Badger case, it is to be construed as covering and relating to the powers of the commissioners in the execution and performance of the duties previously imposed. Prescribing the duties of the commissioners, the General Assembly then defined their powers in the discharge of those duties. Furthermore, consideration of this section of our law conclusively demonstrates that the powers granted are not general but are confined to the carrying out of the duties imposed upon the commissioners by the law; a limited power. Even the corporation created is not one of general powers; is not a business corporation, authorized to engage in business generally, but is one of very limited scope; not a political subdivision of the State, but a public corporation, as is a school district. [Wilson case, supra.]

As before observed, we have had in this State no distinct construction of this particular article of our statute to which we can refer as an authoritative exposition of it so far as relates to the powers of these commissioners. But we have many decisions in line with the Badger case. The question of the powers of commissioners under article 3, chapter 41, Revised Statutes 1909, was before our Supreme Court in State ex rel. McWilliams v. Bates, 235 Mo. 262, 138 S. W. 482, but the issue there in decision is not involved here, and while counsel for appellant cite and seem to rely upon it as helping them out, we cannot so construe it. It turned on the power of the commissioners to make extra assessments, a point not here involved and under provisions not identical with those in article 3 of the same chapter.

These commissioners, respondents here, whose acts in taking up the old levee are claimed to amount to an estoppel against the district, had no authority

whatever, under any orders in the proceedings in this case, to do that. The county court itself had no power to buy and pay for it. No such matter was presented to it. Even the matter of repairing the old levee was not before the court, and our statute is specific in providing how that shall be done. Section 5555 requires that it can be done only by specific order of the county court on a petition presented by the landowners and specifically covering that proposition. This expressed provision is exclusive, excludes any other mode. No one availed themselves of the law or took any steps under it.

It is true it is pleaded that the commissioners in some form or manner allowed those who had paid for the construction of this old work a credit on their assessments. The demurrer admits that that was done, but if it was, there is nothing whatever in the law by which the commissioners in doing it were acting within any of the powers conferred upon them by the statute. So far as pleaded this was an illegal act. Surely no estoppel arises against the district on an illegal act of the commissioners. All the power over old levees, levees previously constructed, which could be vested in the commissioners, even by order of the court, was to provide for repairing and keeping an old levee in repair. The statute gives no power to buy it—to pay for its construction. We are not here passing on this action of the commissioners, in allowing for assessments paid in the construction of the old levee, any further than to say that it presents no ground of estoppel, as pleaded, against the commissioners of the district in this present case.

In the view I take of the construction to be placed upon our law, supported in that view by the decision of the Supreme Court of Illinois in the Badger case, supra, and in line with the decisions of our own courts on cognate matters, I hold that there was no authority whatever in the commissioners of this district to

accept or pay for this old levee in the first place, and, secondly, that their act in accepting and using it, not being within the powers conferred upon them by statute, constitutes no estoppel as against the landowners of the district.

There is nothing pleaded in the petition which amounts to an estoppel upon the part of the landowners themselves, nothing whatever to show that they had their day in court to pass upon the question as to whether they would use and repair or keep up the old levee, much less, would pay for it, and until that occurred there is no estoppel at law or in equity against them by the mere fact of their commissioners using this before-constructed piece of levee.

We held in Watts v. Levee District No. 1, Mississippi County, 164 Mo. App. 263, 145 S. W. 129, that the fact that the new levee had been built along the line of the old one and that the old one had been used in the construction of the new, did not, in itself, make the district liable for warrants illegally issued in the construction of the old levee. There we called attention to the location of the old levee and asked (l. c. 286): "What were the people of the district to do with it? Were they to tear it down and start over? Were they to refuse to repair as needed? In short, unless these public officers of the district, or the public, the landowners, who constituted the district, were to abandon this levee entirely, were they to pay for its construction?" We held in that case that they were not, unless there were other acts amounting to an estoppel, and we found none.

Absent the option of acceptance of rejection, there is no estoppel by leaving and using the old levee. [16 Cyc., p. 787, par. b; 31 Cyc., p. 1270.] At the latter place it is said: "The rule of ratification by the acceptance of benefits also implies the power of election to accept or reject what has been received, and does not apply where the benefit has been received

without knowledge and its return is impossible, as in
the case of labor performed or services rendered, or
its continued enjoyment by the principal is unavoid-
able, as where in taking, using or disposing of a build-
ing or other thing he unavoidably enjoys the benefit
of work or repairs or improvements made thereon.''
[Forman and Company Proprietary Limited v. Ship
Liddesdale, 82 L. T. Rep. (N. S.) 331, March-August,
1900; Woodruff et al. v. Rochester & Pittsburgh R.
R. Co., 108 U. S. 39; Moyle v. Congregational Society,
16 Utah, 69, l. c. 83; Swayne v. Union Mut. Life Ins.
Co., 49 S. W. (Tex. Civ. App.) 518, are cited in sup-
port of this.]

It is true that this extract from 31 Cyc., is un-
der the law treating of the relation of principal and
agent; so are the cases cited in support of it. But
that does not detract from its application here. This
defendant, a corporation, could act only through the
commissioners, who are its agents. The acts of es-
toppel urged are the acts of the agents, and the prin-
cipal is no more estopped in equity than in law, un-
less the estoppel arises on an act of the agent, done
within the scope of his authority. This district, its
members, the landowners themselves did no act of
acceptance. Whatever was done is charged to have
been done by the commissioners.

It has been settled by a long line of decisions in
our State that this peculiar class of corporations, that
is to say public, municipal, corporations, can only
make such contracts so authorized and in the
manner authorized by law. While officers, directors,
members of private corporations, stockholders of pri-
vate corporations, may waive irregularities by subse-
quent assent and so be subject to a plea of estoppel
and in many cases debarred from a plea of *ultra vires*,
such acts are not available as against the public, par-
ticularly taxpayers whose lands or property are pro-
posed to be taken or bound by the acts of their repre-

sentatives. In this latter class of cases there is no one authorized to waive anything, nobody or association of persons whose acts can be held as an estoppel. Thus in the old case of State ex rel. Lexington & St. Louis R. R. Co. v. Saline County Court, 45 Mo. 242, it was held that bonds issued irregularly and contrary to the provisions of law could only be validated by a substantial compliance with the law that authorized their issue.

In Johnson v. School District, 67 Mo. 319, it was held that the fact that the articles which had been by a majority of the directors purchased without compliance with the law, were not chargeable against the school district, and that although they were purchased for the use of the district and had been used in its school, the fact of this acceptance and user did not amount to a ratification of the purchase or impose upon the district any obligation of payment. This case has been often cited and always with approval, as see State v. Lawrence, 178 Mo. 350, 77 S. W. 497.

In Maupin v. Franklin County, 67 Mo. 327, it was held that contracts with a county court could not be established by parol evidence and that where a verbal contract had been made by that court with an individual and the court had paid out part of the money under it and the work had been completed and accepted and used by the county, there was no estoppel against the county and it was not liable for the payment of the debt so incurred.

In Heidelberg v. St. Francois County, 100 Mo. 69, 12 S. W. 914, a contract for the erection of a bridge was let contrary to provisions of the law. The work was done, the bridge accepted. At the time section 1218, Revised Statutes 1879 (now section 3728, Revised Statutes 1909), was in force, which provides that, "If a claim against a county be for work and labor done, or material furnished in good faith by the claimant, under contract with the county authorities, or

with any agent of the county lawfully authorized, the claimant, if he shall have fulfilled his contract, shall be entitled to recover the just value of such work, labor and material, though such authorities or agent may not, in making such contract, have pursued the form of proceedings prescribed by law.'' Notwith-standing this provision of the statute it was held there could be no recovery against the county, the court further holding that the doctrine of estoppel cannot be invoked against a county and that the county court cannot, even by order entered of record, ratify the void acts of one of its officers. Referring to the statute above quoted, Judge SHERWOOD, quoting from it the words, ''agent of the county lawfully author-ized,'' says that when the agent was proceeding in entire disregard of the plainest statutory provisions, he cannot understand how the county can be held lia-ble for his actions; that the agent could be only law-fully authorized when he took the steps pointed out in the law.

In line with the case of East St. Louis v. East St. Louis Gaslight & Coke Co., 98 Ill. 415, cited by the Supreme Court of Illinois in the Badger case, supra, is the decision of our Supreme Court in State ex rel. v. Milling Co., 156 Mo. 620, 57 S. W. 1008. There it is held (l. c. 634) that a municipal corporation may ratify an act done in its name, which was within its corporate powers, but which was not done in the man-ner prescribed by law. Quoting from Tiedeman on Municipal Corporations, sec. 170, and referring to that and cases cited, it is said that a municipal corporation is not bound by a contract made by its agent or offi-cer which the agent or officer had no authority to make, ''but if the contract is for a corporate purpose, and within the powers conferred upon the municipal-ity by its charter, or by the general law, it may be ratified by the corporation and become binding upon

Wilson v. Drainage District.

it." But there must be the power present to validate the informal act.

In Phillips v. Butler County, 187 Mo. 698, 86 S. W. 231, the rule announced in Heidelberg v. St. Francois County, supra, that a county court cannot, even by order of record, ratify the void acts of one of its officers and that it must logically follow that if it could not, even by entry of record, ratify the void order of one of its officers, it could not ratify one of its void acts, is reiterated, the court saying in the Phillips case that there is no difference in principle between the ratification of its own void acts and the void acts of one of its officers. Says the court (l. c. 713): "The reason is that a void act is incapable of ratification." Referring to Wolcott v. Lawrence County, 26 Mo. 272, and Heidelberg v. St. Francois County, supra, it is further held in the Phillips case (l. c. 714), that the fact that plaintiff rendered services by and with the knowledge and consent of the county court of the county, did not amount to a ratification by the court of his supposed contract of employment nor does the doctrine of estoppel apply to counties.

In Seaman v. Levee District, 219 Mo. 1, 117 S. W. 1084, where the drainage commissioners had employed one of their number as an engineer and the person so appointed attempted to recover pay for his services, the court held that the employment, in the face of the prohibition of the statute against any commissioner being directly or indirectly interested in any contract for the construction of any ditch or drain, made the contract illegal and void, and that notwithstanding the fact that the commissioners had accepted the work done by this engineering member and had used it in the course of their work as commissioners, the person so employed could not recover from the district the value of the work done by him as engineer, nor is the district inhibited from invoking the invalidity of the contract for that the work was fully per-

formed, in good faith, and was worth the amount promised, and was beneficial to the district, and that it retains that benefit and cannot make restitution. In the consideration of this case Judge Woodson cites a multitude of cases in support of the proposition announced and examining those claimed to be in favor of the payment as well as those against it, concludes (l. c. 36): "If we apply the law enunciated in the cases before cited to the case at bar, then respondent is not entitled to a recovery upon the warrants issued to him in payment of his services rendered as engineer to the appellant district, for the reason that the commissioners, by said section 8336, R. S. 1899 (now section 5565, and one of the very sections of the article we are now considering), were absolutely prohibited from employing respondent as engineer to do the engineering work of the district."

Learned counsel for appellant place great stress upon this last cited decision. In my view that decision, instead of supporting, makes against plaintiff, appellant here. Those counsel urge that it was the express prohibition that rendered the employment void. That is true. But it is also true, as shown by the cases cited above, that when there is absence of authority in the public body to do the act at all, the act done is void and can confer no obligation on the public.

In Union National Bank of Kansas City v. Lyons, 220 Mo. 538, 119 S. W. 540, also relied upon by counsel for appellant, it is said that the suit was not bottomed on the note, and that the plaintiff's success in the case did not depend upon the validity of that instrument. "It is sufficient," says the court (l. c. 556), "that appellant (defendant) had the power to borrow the money and that it did in fact borrow it. . . . If the bank obtained the money and by mistake or without authority of law executed therefor an invalid note, then it was its duty under this general obligation

to do justice, to refund it. Under those conditions an implied obligation arose on the part of the appellant to repay the money so obtained.'' Numerous decisions from the Supreme Court of the United States and from other authorities are cited in support and illustration of this proposition. Underlying the decision of the Lyons case and of all the cases there referred to, is the fundamental, crucial proposition, that authority to do the act being present, where the invalidity claimed consists, not in the lack of authority to do the act, but in the form in which the act was consummated, liability is not avoided by the defective execution of the power. That is not this case. Here there is an entire lack of legal power in the first commissioners to act, and in these present commissioners to make payment for this old levee. There is no law authorizing that. Even the question of repairing the old levee was never presented in any way to the landowners of the district, who may be called the corporators of the district, and the principals of the commissioners. They never had their day in court on it. Nor is the doctrine of estoppel applied as against the principal on the acts of an agent, even if acting within the scope of his authority and employment, unless, as we have before noted, the principal has had an opportunity to repudiate or accept the action proposed or purported to have been taken by his agent. We know of no different rule in equity than at law in respect to this. In any event, to invoke estoppel, plaintiff must have a legal demand on which to base the estoppel. Here he has none.

Nor am I impressed with any equities existing in favor of plaintiff, his intestate, or of intestate's assignor, the contractor. The work which was done by Wilson, contractor, was done at the instigation and on the employment and under contract with a body purporting to represent the people of a certain district and that body, our Supreme Court has held, both

in the Jamison and Wilson cases, supra, was a body without legal existence and without any power whatever to impose any obligation upon the landowners of the district. Moreover it cannot be said, as was the fact in the Lyons case and in all the cases referred to in his opinion in that case by Judge WOODSON, that the plaintiff seeking to recover the money which he was out, or for the work and labor which he had performed, or for the property which he had conveyed, was an innocent party in the transaction. That is not the case here.

It is true that it does not specifically appear by the petition when the work of this levee was done by the contractor. It does appear, however, by the averments of the petition, that the contract was let to the original contractor on the 21st of October, 1895. The warrants which were issued in part payment for part of the work were issued as the work progressed and under the law could only be issued for such part of it or such portion of it as had been completed. The first of the warrants, No. 51, bears date May 22, 1896. Another, numbered 92, bears date December 14, 1897. The other two (there were four warrants in all involved in this suit) are dated respectively February 4, 1901, and October 16, 1902. It is stated in the latter, however, that it is issued in part for a warrant numbered 23, issued to Wilson, and as these warrants are evidently part of a series, the warrant for which this one was issued must have been of date prior to May 22, 1896, which is the date of warrant No. 51, and the warrant of February 4, 1901, purports to be issued in part for warrant No. 155, which had been taken up. There are no data upon which we can fix the date of this warrant No. 155, but the warrant issued in part for it, No. 189, is dated February 4, 1901, so that, of course, No. 155 was issued prior to February 4, 1901.

The original proceeding for the creation of this drainage and levee district, which was by the filing of a petition in the Lincoln county court, was in 1894. A hearing was had on it on the 17th of August, 1894, on which date the county court found and adjudged the petition had been signed by a majority of the owners of all the lands in the district and by the owners of a majority of all said lands and it further appearing to the court that the drains, levees, etc., were necessary and useful for the drainage of the lands, etc., the court duly ordered and adjudged accordingly and appointed Seaman, Baskett and Wilson as commissioners to lay out and construct the proposed works. Afterwards the commissioners filed their report describing the district and the cost of the proposed work and on the 4th of April, 1895, the county court, by an order of record, fixed the 16th of May, 1895, as the time, and the courthouse in the city of Troy as the place, when and where all persons interested in the report or in the work referred to might appear and contest the confirmation thereof. A hearing was had and on May 25, 1895, the county court adjudged that all the proceedings had were regular and valid and after modifying the report of the commissioners to conform to the court's finding, duly confirmed the report, "and ordered, adjudged, declared and decreed that said report should be effective, binding, final and conclusive, and that the said proposed work and that said drainage district be authorized and established and the assessments of benefits made therefor approved and affirmed." As it is averred in the petition, on the entering of record by the county court of the order and judgment of confirmation of the report, "said drainage district was by the further order and judgment of the court declared to be a body corporate by the name aforesaid; that thereupon immediately afterwards the said commissioners duly

176 Mo. App. 34

adopted a common seal for the corporate body.'' Following this part of the same sentence is the averment that this common seal has been and is the common seal of the defendant in this case. We include this last clause to be accurate in quotation, but as before remarked, do not consider it of any effect in the determination of this case.

It was after this that the contract was awarded for the construction of the levee to the firm of A. V. Willis & Sons, who afterwards assigned it to Wilson. It further appears by the petition in this case that on the day set for the hearing of the report of the commissioners, that is to say, May 16, 1895, one Jamison, the owner of certain lands within the district, appeared in the county court and objected and remonstrated against the report. His objections and remonstrances were overruled. He appealed from that to the circuit court in May, 1895, and from the circuit court to the Supreme Court and there the case which we have before referred to, entitled King's Lake Drainage & Levee District v. Jamison, was not determined until July 2, 1903, on which last named date the Supreme Court affirmed the judgment of the circuit court overturning that of the county court and remanded the cause to the county court of Lincoln county, ''to be by it taken up and tried as if the original petition was presented to it for the first time, and to proceed with the cause without regard to anything that has heretofore been done in the cause, but in conformity herewith and with the statute.''

This is the judgment by which, as said by Judge GRAVES in the Wilson case, supra (1. c. 45), ''The old proceeding was torn up, root and branch . . . . and such opinion becomes the law of this case whether right or wrong.'' So that it appears beyond room for cavil, and, indeed, it was practically admitted by counsel before us in the argument of the case, that all of the work which Wilson, the contractor, did in con-

nection with the construction of this levee was done after the appeal from the county court and before the determination of it by the Supreme Court, and with constructive notice, at least, charged by law with knowledge, that the very authority under which he claimed to act was challenged and the question of the existence of the body that had awarded him the contract was pending in the courts of the State. The effect of the appeal was to wipe out the corporation itself, and the powers of the commissioners, pending its determination. [State ex rel. v. Mosman, 112 Mo. App. 540, l. c. 547, and cases there cited; 87 S. W. 75.] In no sense was Wilson, the contractor, "an innocent party," a party without notice of the fact that the power and authority of the person under whom he claimed was being challenged, and he is not in the position occupied by plaintiff in any of the cases referred to by Judge WOODSON in the Lyons case as parties entitled to the equitable interposition of the courts or as parties who, suing under the form of common counts for money had and received, are entitled to recover *ex aequo et bono.*

We say that Wilson, the contractor, did the work with knowledge and at his peril, for he, in common with all people is assumed to know the law and to assume that when the Supreme Court decided the Jamison case that it was making no new law but simply stating the law as it is and as it always had been. As said in Barnard & Co. v. Knox County, 105 Mo. 382, l. c. 390, 16 S. W. 917, "It is the duty of persons dealing with counties and county officials, as well as of county officials themselves, to take notice of the limit prescribed by the Constitution. . . . Soliciting agents, contractors and others who deal with county officials must see to it that the limit of county indebtedness is not exceeded, and, if they fail to do this, they must suffer the consequences."

Wilson was not led by the defendant's conduct to do anything prejudicial to himself; he did his work with his eyes open to the fact that the legal existence of the body which had awarded him the contract was ·challenged and then before the courts. It is difficult, therefore, to see how defendant has in any way precluded itself from disputing legal liability. [Forman ·et al. v. Ship Liddesdale, supra.] Wilson, the contractor, the assignor of appellant's intestate, who built this levee, did his work under a void contract; under a contract that "fell to the ground." So says our Supreme Court in the Seaman and Jamison cases, supra.

But appellant says he is not here basing his claim upon the warrants, but really for work and labor done, and seeking, by invoking equity, to impose the value of that work on the district. If we are to treat this as an action to recover for work and labor, it must be for work and labor done under a lawful contract, express or implied, and for all the work and labor done under the one contract, not for a part; not for only so much of it as is represented by these warrants assigned to or issued to plaintiff's intestate; provided there has been an assignment of part of the claim, the assignment lawfully assented to by the debtor. It may be gathered from the petition that these are not the only outstanding warrants given for the old work still outstanding and unpaid; that they do not cover all the claim for that work. It was distinctly admitted in the case at bar that other warrants of like kind are outstanding and in suit, that suit awaiting the determination of this. Plaintiff is therefore confronted with the settled rule that one cannot split his cause of action; cannot assign part of a debt due so as to make his debtor responsible to several parties, without the assent of his debtor. No such assent is here pretended.

This is not the case presented in City of Louisiana

v. Wood, 102 U. S. 294, referred to among other cases
by Judge Woodson in the Lyons case, supra, and by
my associates here. In the Wood case the city of Lou-
isiana was found to have obtained money from the as-
signor of the defendant in error, plaintiff in the lower
court, on fraudulently issued bonds, the city authori-
ties antedating the bonds to make it appear they had
been issued under a law authorizing their issue.
The plaintiff below was the owner of all of them.
He or his assignees, without notice of the fraud, had
paid the city full value for them and, charging the
fraud attendant upon their issue, tendered back to the
city all of the bonds and demanded the return of money
paid out by him for the bonds, all of that money hav-
ing gone into the treasury of the city. There was not
only a lawful demand, but a demand for the whole
amount. That is not this case.

It is suggested that the rule against the splitting
of a cause of action applies only to actions at law, and
not to suits in equity. We are referred to no case
which makes any such distinction. Nor do we see any
reason for applying a different rule.

In the ultimate analysis, and to reiterate, to en-
able plaintiff here to recover, he must have a valid
claim. An estoppel never rests on an unlawful, void
demand. If we were proceeding according to the old
common law form of practice, where actions at law
were carefully separated from suits in equity, the
plaintiff here would first be compelled, in an action at
law, to establish his demand as a valid legal obliga-
tion, that is, reduce his claim to judgment, and then,
applying to a court of equity, enforce that against the
property of the defendant; enforce against him his
established demand. We have cut short all such tor-
tuous proceedings and allow the same purpose to be
accomplished in one action, but in doing that we have
not abandoned the rule that it is essential to a recov-
ery that it must be for the whole demand, cover all

of that, and that one could not, even in equity, come in and establish part of his demand resulting from a splitting of his demand in several different parts, the debtor never having assented to the separation, and establish his right to a part of his cause of action, leaving the other still standing against the debtor. Above all, he must have a valid claim, a claim which can be established at law.

One of the grounds of demurrer specially invoked is the five-year Statute of Limitations in bar of the action. That may be done by special demurrer. [Burrus v. Cook, 215 Mo. 496, l. c. 503, 114 S. W. 1065.] But in the view I take of the case, I do not consider it necessary to pass upon that ground. My associates have not noticed it.

With every disposition to compel those who are enjoying the fruits of another man's industry, or who have received money from him, to compel compensation or payment, I cannot, under the facts of this case, as set out in the petition, bring myself to the conclusion sustaining this present action, without, as I think, violating fundamental principles that lie at the very foundation of correct administration of the law and application of the principles of equity, and going contrary to settled rules governing the creation of obligations against the public. Our people are engaged in no more meritorious or important work than that involved in the rescue of their lands from devastation by overflow, and to make waste places tillable. To do so involves vast expenditure—often grave sacrifice to the landowners. The burden for the accomplishment of this, when cast upon them, must be by their consent and through their officers legally authorized so to do. That has not been done here and the landowners of this district should not be subjected to taxation to meet this claim. So we held when this case was first argued and submitted. On careful reconsideration of the case and with the arguments of the learned and industrious

counsel for appellant before us, I see no reason to arrive at a different conclusion.

The judgment of the circuit court accordingly should be affirmed.

With a few verbal alterations and the elimination of some rather long quotations which I thought necessary to make if my opinion was to be accepted as that of the court, the foregoing is the statement of facts and conclusions thereon which I prepared in the case. As stated above when the case was formerly argued and submitted, we all agreed to affirm the judgment of the circuit court in sustaining the demurrer. Rehearing granted, counsel submitted additional briefs in support of their position, and while I saw no reason to change my views, I thought it proper, out of respect to counsel, to discuss the points involved more fully. As my learned associates, however, on further consideration, have arrived at a different conclusion, in which I cannot concur, I file my opinion as prepared on reargument, with these added observations, made necessary by the position taken by my brethren.

It seems to be intimated in the opinion of the majority members of the court that I have gone outside of the averments of the petition by statement of facts and conclusions and arguments based thereon. If that is meant, I do not think that it finds support in anything that I have said. I have confined myself strictly to the petition to which the demurrer was interposed, not however touching on that part of the demurrer which invoked the Statute of Limitations. Possibly my opinion is open to the criticism that I have gone to the decisions of our court in the Jamison and Wilson cases for some dates, but that, I understand, is always open to the court to do. The Supreme Court, in this very Wilson case, has said (l. c. 45), that the opinion in the Jamison case "becomes the law of this case, whether right or wrong," and I have used the

opinions in both cases, as well for the law as the facts. Beyond that I have not, in any manner whatever, departed from the petition in the case. That is particularly so with reference to that part of the opinion in which I discuss the so-called equities of the plaintiff here and his assignor. Every date there is taken out of the petition itself and I have applied to those dates the law which provides that warrants are only to issue as the work progresses, in payment of such of it as is finished and accepted as done in compliance with the contract.

My learned associate, Judge NORTONI, places great stress upon the opinion of Judge THAYER in Hill v. City of Kahoka, 35 Fed. 32, as well as on several decisions of the Supreme Court of the United States and on the great authority of Judge Dillon in his work on Municipal Corporations. I do not think that these decisions apply in our State to the extent claimed, nor that they are in line with the decisions of our own courts on kindred matters. It is a well-known fact that the decisions of the Supreme Court of the United States and of the subordinate Federal tribunals have gone to a much greater length in enforcing obligations of municipalities than have the courts of our State, as witness the litigation growing out of the Cass county bonds and out of what are known as the M. & M. River Railroad bonds, with which decisions doubtless all are familiar. Judge Dillon, thoroughly in line and sympathy with these decisions, has written in that spirit. In effect, these decisions hold that however lacking in authority the officers may have been who issued the obligation of a community, where the community has had the benefit of these unauthorized acts and, in other cases, as in the M. & M. River Railroad bonds, even where the community received no benefit whatever from them, the people are liable either on the bonds, or for the work done or money received. For illustration of the difference in decision between our

Supreme Court and that of the United States, see State ex rel. Woodson v. Brassfield, 67 Mo. 331 and Douglass v. County of Pike, 101 U. S. 677. But very clearly and distinctly, as appears by the decisions which I have cited from our own Supreme Court, it has been held time and again, from the Johnson case down, that there is no estoppel against the community from repudiating the illegal acts of those claiming to act as its agents, whether lawful agents or such merely *de facto*. If they were not legal obligations of the public, such as a school district, etc., and were not legally imposed, our Supreme Court has been firm in its declaration that no estoppel lies against the public by reason of the acts done or by reason of benefits received. It seems to me a very remarkable position that a county court, without being vested by authority to take over an old levee previously constructed and whose only power over an old levee is, on petition to that end, to repair one already constructed, can be held to possess authority to order payment for one previously constructed by an illegal body, or for levee commissioners who had no original authority to do so, to attempt to or be made to pay for the construction of a levee not built under their contracts, and for the landowners of the district to be estopped from disputing the claim for work illegally done, by the act of the commissioners in using that work. The men who had this work done and who claimed to be commissioners were never commissioners in law. They were mere usurpers. With the proceeding which appointed them "torn up root and branch," they were not in office even under color of authority, for the decision of our Supreme Court in the Jamison case cut back of their authority —of their very existence, and of the existence of the corporation itself.

My learned Brother NORTONI lays some stress upon section 5573, which is to the effect that the pro-

visions of the article are to be construed liberally and so as "to promote the drainage and reclamation of wet and overflowed lands within this State, the building of necessary embankments or levees, and the preservation of any system of drainage heretofore constructed under any law of this State." I think that in his effort to bring this section into use as sustaining this action, he has overlooked the last clause of it, which in so many words provides that all this work of promotion, etc., and preservation of levees is to be applied to levees and drains which have been "heretofore constructed under any law of this State." In the light of the decisions of our Supreme Court as to this very levee it certainly was not "constructed under any law of this State." The General Assembly, in incorporating that section into the statutes, hardly intended to give a free hand to any body of men, whether county court, commissioners, or otherwise to impose burthens upon the people without complying with the plain terms of the law, and the burthens having been cast upon the community by their illegal acts, that the law should be so freely construed as to make that valid which before was invalid and void. I do not understand that this action is in any way covered by this section of the statutes.

This case will present a very curious situation, if, under the law as announced by the majority of our court, the plaintiff recovers. Before the commissioners can pay for a levee, funds will be required to meet the payment. The commissioners can only assess damages under approval of the county court, made after the landowners of the district have been heard. We order a judgment and direct an assessment for its payment. By what right? Have we any higher right or more power than the county court or the commissioners? We are an appellate court, with no original jurisdiction in this matter. Our jurisdiction is as surely derivative as is that of a circuit court on ap-

peal from a justice of the peace. Where is the power
to enforce payment for this old levee by taxation of
the landowners of the district, the people, to pay such
judgment? I respectfully submit that power is lack-
ing. Any judgment rendered in favor of plaintiff
and against the defendants in this action would have
to be made on execution against the district. That
district has no property; its assets—the assets of the
corporate body—consist of taxes collected off the land-
owners of the district. Taxes are only to be imposed
in the manner and for the purpose provided by law
and through the instrumentalities of the law. What
power exists in this, our court, or in the Supreme
Court, or for that matter, in any court, to arbitrarily
order an assessment of taxes to pay any judgment here
rendered? The people of this district have never voted
taxes for this—in fact have never had the matter sub-
mitted to them in any form. I can see nothing in
any judgment and order for its enforcement but an
arbitrary exercise of an unconferred power. Lacking
power to enforce a judgment here, the court should not
order one, for courts do not do useless things.

It seems to me that all that there is in this case
as a question of estoppel, that is the real point in
decision and as I understand the decisions of our own
State courts, the law and doctrine of estoppel has no
application as against the public when estoppel is at-
tempted to be invoked on the basis of illegal acts of
public officers or on the acts of those who were not
*de jure* officers authorized to contract for the public.
Entertaining a very strong opinion to that effect, jus-
tified in it as I think by the decisions which I have
cited from our own Supreme Court from the Johnson
case down to the Seaman case, I think that the conclu-
sion arrived at by my brethren is contrary to those
decisions and I most respectively ask that on that
ground this cause be certified to the Supreme Court for
its determination.